**In re H & S TRANSPORTATION CO., INC., Debtor.**

**C. Bennett HARRISON, Jr., Trustee, Plaintiff,**

**v.**

**ST. LOUIS FUEL & SUPPLY COMPANY, INC., et al., Defendants.**

**Bankruptcy No. 381–02803. Adv. No. 382–0670.**

United States Bankruptcy Court, M.D. Tennessee.

Dec. 26, 1984.

---

C. Bennett Harrison, Jr., Nashville, Tenn., Trustee.

Paul B. Lee, St. Louis, Mo., for defendant.

## MEMORANDUM

GEORGE C. PAINE, II, Bankruptcy Judge.

This matter is before the court on cross motions for summary judgment filed by both the trustee for the debtor and by St. Louis Fuel & Supply Company, Inc. (hereinafter referred to as the "defendant"). This action is part of a number of consolidated preference actions brought by the trustee against a number of defendants who either supplied fuel to the debtor or owned towboats leased to the debtor. The trustee has alleged that the defendant, a fuel vendor, received three preferential transfers from the debtor in the total amount of $71,824.40. The defendant has asserted that a number of 11 U.S.C. § 547(c) (West 1979) defenses preclude the trustee from recovering any preferential transfers. The primary focus of the defendant's motion for summary judgment relies upon his claim that the preferences are offset by § 547(c)(4) subsequent advances.[1] In response, the trustee contends that § 547(c)(4) is inapplicable since any new value extended by the defendant was secured by a maritime lien. On consideration

---

1. The defendant has also relied on the net result rule, the contemporaneous exchange exception of § 547(c)(1) and the ordinary course of business exception found in § 547(c)(2). Due to this court's holding, it is unnecessary to discuss the applicability of these exceptions to the present case.

of the stipulations, exhibits, statement of counsel, and the entire record, the court concludes that summary judgment should be GRANTED in favor of the defendant.

The following shall constitute findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

The debtor, H & S Transportation Company, Inc. (hereinafter referred to as the "debtor"), was a corporation located in Nashville, Tennessee, involved in the business of towing barges on the inland waterway system. This towing was done both with the debtor's own towboats and towboats leased from various parties. As the debtor transported goods along the waterway system, these towboats received fuel from a number of maritime fuel suppliers. The defendant, a corporation in the business of supplying commercial towing companies with fuel, parts, maintenance equipment, and other supplies, provided the debtor with fuel on numerous occasions. During the period from December 2, 1980, through September 4, 1981, the debtor was allowed to purchase fuel and supplies from the defendant on an open running account.

On September 4, 1981, the debtor filed a voluntary Chapter 11 petition in this court. On July 19, 1984, the court consolidated this proceeding with four other preference actions instituted by the trustee dealing with similar claims.

The trustee has sought to avoid three payments made by the debtor to the defendant in the amount of $200, $15,000, and $56,624.40, respectively. The $200 check was dated July 2, 1981; it was deposited by the defendant in its bank account and subsequently cleared the debtor's bank account on July 10, 1981. The $15,000 check was dated August 18, 1981; it was deposited by the defendant in its banking account and cleared the debtor's bank account on August 24, 1981. The final check in the amount of $56,624.40 was dated June 25, 1981; it was deposited by the defendant in its bank account and cleared the debtor's bank account on July 30, 1981.

Each of these transactions was a payment by the debtor for fuel or credit extended by the defendant. The $200 check was remitted to the defendant in payment of a $200 cash advance extended to one of the debtor's towboat captains on May 24, 1981. The $15,000 check was remitted to the defendant in partial payment of $46,454.05 of diesel fuel supplied by the defendant to one of the debtor's towboats on May 8, 1981. The $56,624.40 check was remitted to the defendant in full payment of fuel extended to the debtor for the M/V VOLUNTEER STATE on April 27, 1981.

After the alleged preferential payments were received and deposited, the defendant supplied the debtor with additional fuel and services. Based upon the affidavits of Mr. Jack Chouner, the president of the defendant, the following chart lists the advances of fuel and services provided by the defendant to the debtor subsequent to the transactions in question.[2]

| PAYMENTS TO ST. LOUIS FUEL | |
|---|---|
| July 3, 1981: | $ 200.00 |
| July 25, 1981: | 56,624.40 |
| | $56,824.40 |

| SALE OF DIESEL FUEL & SERVICES BY ST. LOUIS FUEL | | |
|---|---|---|
| 8-1-81 | Sally Barton | $14,286.10 |
| 8-9-81 | Henderson Barton | 27.50 |
| 8-10-81 | Celeste Campbell | 18,540.00 |
| 8-11-81 | Sally Barton | 128.20 |
| 8-11-81 | Sally Barton | 15,522.10 |
| 8-12-81 | Henderson Barton | 4,349.69 |
| 8-13-81 | Clyde Dunlap | 30,539.50 |
| | | $83,393.09 |

2. The chart listed by the court excludes a number of transactions. In his first affidavit, Mr. Chouner attested to transactions in which the defendant supplied fuel for the M/V BETH ARMSTRONG and the M/V VOLUNTEER STATE. However, in his second affidavit, Mr. Chouner stated that the bills for these transactions had been paid due to compromises with the owners of both vessels.

| PAYMENTS TO ST. LOUIS FUEL | | SALE OF DIESEL FUEL & SERVICES BY ST. LOUIS FUEL | | |
|---|---|---|---|---|
| August 18, 1981: | $15,000.00 | 8–21–81 | Sally Barton | $14,327.30 |
| | | 8–26–81 | Clyde Dunlap | 10,298.97 |
| | | 8–28–81 | Clyde Dunlap | 15,450.00 |
| | | 8–29–81 | Sally Barton | 10,300.00 |
| | | 8–31–81 | Celeste Campbell | 16,480.00 |
| | $71,824.40 | | | $66,856.27 |

No counter evidence has been filed which disputes that these amounts are owed by the debtor.

## I.

In order for the court to grant summary judgment, it must determine, upon consideration of the entire record, that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Edmondson v. Bradford-White Corporation (In re Tinnell Traffic Services, Inc.)*, 41 B.R. 1018, 1021 (Bankr. M.D.Tenn.1984); *McAllester v. Aldridge (In re Anderson)*, 30 B.R. 995, 1013 (M.D. Tenn.1983). The court may consider any material that would be admissible or useable at trial, including affidavits, depositions, admissions, answers to interrogatories, and similar material. 10A C. WRIGHT, A. MILLER, and M. KANE, FEDERAL PRACTICE AND PROCEDURE § 2721 (1983). In opposing a motion for summary judgment, a party may not rely solely upon its bare allegations in the pleadings, but must present sufficient material evidence to raise a material issue of fact. *State Mutual Life Assurance Company of America v. Deer Creek Park*, 612 F.2d 259, 268 (6th Cir.1979); 10A C. WRIGHT, A. MILLER and M. KANE, FEDERAL PRACTICE AND PROCEDURE, § 2739 (1983); FED.R.BANKR.P. 7056; FED.R.CIV.P. 56(e).

Although the defendant has asserted five defenses to this preference action, the court need only deal with one defense. The defendant has alleged that pursuant to the "subsequent advance rule" it made sufficient transfers of new value to set off the preferential transfers sought by the trustee. The trustee counters that genuine issues of fact exist concerning the amount of the subsequent advances and whether the defendant has received payment for these advances. Even if these facts are sufficiently established by the defendant, argues the trustee, the subsequent advance rule is inapplicable since the new value extended by the defendant was secured by maritime liens.

The subsequent advance rule is found in 11 U.S.C. § 547(c)(4) (West 1979).[3] This rule provides that if a creditor transfers new value to a debtor without payment or a security interest, the creditor may use the new value to set off a previous preferential transfer. In determining whether the subsequent advance rule can be applied to a specific case, the court must focus on the following three issues: (i) did the creditor extend new value after receiving the preference; (ii) did the creditor receive payment for the new value; and, (iii) did the creditor receive a security interest for the new value. *Keydata Corporation v. Boston Edison Company*, 37 B.R. 324, 328 (Bankr.D.Mass.1983); *Pettigrew v. Trust Company Bank (In re Bishop)*, 17 B.R. 180, 183 (Bankr.N.D.Ga.1982).

---

**3.** 11 U.S.C. § 547(c)(4) provides in relevant part:
(c) The trustee may not avoid under this section a transfer—
(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and
(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;....

■ In the present case, the first two elements of the defendant's § 547(c)(4) defense present purely factual issues. Since the supplying of fuel and services falls within the definition of "new value" under § 547(c)(4), these issues turn on whether the defendant in fact transferred new value subsequent to the preferential transfers and whether the advances remain unpaid.[4]

The defendant has submitted two affidavits by Mr. Jack Chouner which establish the amounts and dates of subsequent transfers by the defendant and the transfers for which the defendant has received payment. The unpaid subsequent advances are represented in the chart above. The trustee has countered this evidence with Mr. Jack Chouner's deposition testimony that the defendant had received payments for some of these advances. Upon analysis of these statements, the court finds that they merely reiterate statements made in his second affidavit detailing payments for advances received by the defendant from both Provident Leasing Company and United Liberty Life Insurance Company. The proof before the court establishes that the subsequent advances listed in the above chart were actually received by the debtor from the defendant and remain unpaid.

The third issue before the court concerns whether or not the new value advanced by the defendant was secured by a security interest. The trustee asserts that since the defendant received an automatic maritime lien against each vessel it supplied with fuel or services, it was secured in violation of § 547(c)(4)(A). The defendant has responded that the existence of a statutory maritime lien securing new value does not preclude the assertion of a § 547(c)(4) defense.

Under the subsequent advance rule, new value must not only remain unpaid, but must "... not be secured by an otherwise unavoidable security interest; ..." 11 U.S.C. § 547(c)(4)(A) (West 1979). The Code defines a "security interest" in 11 U.S.C. § 101(38) (West 1979) as a "... lien created by an agreement". To determine whether the new value extended by the defendant is secured by a security interest, the court must determine the nature of the maritime lien and whether that lien falls within the statutory definition of a "security interest".

In the case of *In re H & S Transportation Company, Inc.*, 42 B.R. 164 (Bankr.M.D.Tenn.1984), this court was called upon to determine whether or not a maritime lien arising under 46 U.S.C. § 971 (West 1979) constituted a "judicial lien". This court held that a maritime lien was not a "judicial lien" due to the fact that it arose automatically upon the furnishing of necessaries solely by force of a statute. "Thus, a maritime lien created pursuant to 46 U.S.C. § 971 is not attained by any legal or equitable process or proceeding as required under 11 U.S.C. § 101(27), but is created automatically." *H & S* at 167.

Although this court did not specifically identify a maritime lien as a "statutory lien", the characteristics of the maritime lien fall directly within the Code's definition of a statutory lien.

■ Under 11 U.S.C. § 101(39) (West 1979) a statutory lien is defined as a "... lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such

---

4. The trustee has raised the legal issue of whether or not the preferential transfers took place on the date the defendant received the check or on the date on which the check cleared the debtor's bank account. In the case of *Ray v. Gulf Oil Products*, 37 B.R. 303 (Bankr.M.D.Tenn.1984), this court held "... a check is thus considered transferred under § 547(c)(4) when the check is honored, unless it is honored within ten days of the date of delivery in which case the check will be considered transferred on the date of delivery." *Ray* at 309. In the present case, the date of delivery has not been established by the parties; however, since the sufficient transfers occurred subsequent to the date the check cleared the debtor's bank account to set off the preferential transfers, the court need not address this issue.

interest or lien is made fully effective by statute; ...." "The essence of the definition in section 101(39) is the need or lack of it, for an agreement to create the lien. If the lien arises by force of statute, without any prior consent between the parties, it will be deemed a statutory lien ... [i]f the creation of the lien is dependent upon an agreement, it is a security interest even though there is a statute which may govern many aspects of the lien." 2 COLLIER ON BANKRUPTCY § 101.39, at 101–79 (15th ed. 1984). Tax liens and mechanics liens have been identified as statutory liens. *Small v. Hennepin County*, 18 B.R. 318 (Bankr.Minn.1982); *In re Saberman*, 3 B.R. 316, 318 (Bankr.Ill.1980). Since the maritime lien arises automatically and by force of statute, it clearly falls within the Code definition of a statutory lien.

■ Even though the court has determined that the lien in question is a statutory lien, it must now decide whether or not it could also be classified as a "security interest". Upon examination of the provisions and construction of the Code, legislative history and case law, the court is led to the inescapable conclusion that a statutory lien cannot be classified as a security interest.

The Code definition of both a statutory lien and security interest suggest, when read in conjunction, that the terms are mutually exclusive. A statutory lien is defined to specifically exclude both a security interest and a judicial lien. 11 U.S.C. § 101(39) (West 1979). While the definition of a security interest does not specifically exclude statutory liens, it is hard to imagine a reading of the definition which would include them. A security interest is a "lien created by an agreement". 11 U.S.C. § 101(37) (West 1979). To hold that a lien created automatically by force of statute is a lien created by a consensual agreement is incongruous. A statutory lien is not consensual and cannot be a security interest.

A number of courts, in construing 11 U.S.C. § 522(f) (West 1979), have been forced to determine whether a security interest, a statutory lien and a judicial lien are mutually exclusive concepts. These courts have analyzed the legislative history of the Code and have found that "[t]he legislative history of the Code makes it crystal clear that the above definitions are mutually exclusive, that is, a given lien may not fall within more than one of the above three categories." [5] *In re Galbraith*, 15 B.R. 549, 551 (Bankr.E.D.Pa. 1981). *See also Lucas v. Fayette*, 21 B.R. 794, 796–797 (Bankr.Mich.1982); *Tanner v. Finance America Consumer Discount Company*, 14 B.R. 933, 935 (Bankr.W.D. Pa.1981).[6]

The structure of the Code further supports the maxim that statutory liens and security interests are mutually exclusive. The conditions under which a trustee may avoid the fixing of a statutory lien are enumerated in 11 U.S.C. § 545 (West 1979) while security interests must be avoided pursuant to the terms of 11 U.S.C. § 544 (West 1979). In § 547 certain security interests are protected from avoidance under § 547(c)(5) while certain statutory liens are protected from avoidance pursuant to § 547(c)(6). Throughout the Code, one can find numerous examples in which Congress

---

5. The legislative comment to 11 U.S.C. § 101(27) (West 1979) provides in relevant part:
   In general, the concept of lien is divided into three kinds of liens: judicial liens, security interests, and statutory liens. Those three categories are *mutually exclusive* and are exhaustive except for certain common law liens. (Emphasis added.)
   H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 312 (1977).

6. In the *Tanner* case, the court noted that Congress in 11 U.S.C. § 101(28) (West 1979) had defined the word "lien" broadly and without qualification in 11 U.S.C. § 101(28) (West 1979) but had delineated a number of subspecies of liens such as statutory liens and security liens. The court stated:
   "Congress defined judicial lien in § 101(27), security interest in § 101(37), and statutory lien in § 101(38). These are specific types of liens within the general definition of lien. These terms are used throughout the Code indicating Congress knew how to designate subspecies of liens when it so desired."
   *Tanner* at 935.

provides different sets of rules for security interests, statutory liens and judicial liens.

■ The conclusion that § 547(c)(4) precludes a setoff for new value secured by a security interest but not for new value secured by a statutory lien is supported by an analysis of an analogous section found in the old Bankruptcy Act.

Congress, in § 547(c)(4), codified the "net result rule" found in § 60(c) of the Bankruptcy Act of 1898. Section 60(c) of the 1898 Act allowed a debtor to set off subsequent credit afforded a debtor "without security of any kind". 11 U.S.C. § 96(c) (West 1968). In construing § 60(c) of the Act, courts held that when a creditor declared a setoff pursuant to § 60(c), "... [t]he most reasonable interpretation of the creditor's intent in filing such claim is that he expressly denies any adverse claim to the property supplied or to any other property that would diminish the estate in its stead." *American Standard, Inc. v. Nass (In re Jack Kardow Plumbing Company)*, 451 F.2d 123, 137–138 n. 52 (5th Cir.1971). *See also Baranow v. Gibraltar Factors Corp. (In re Hygrade Envelope Corp.)*, 393 F.2d 60 (2d Cir.1968). However, when Congress drafted § 547(c)(4), the predecessor to § 60(c), it did not adopt the language used under the former Act. Instead, it changed the phrase "security of any kind" to "unavoidable security interest". Such a change reinforces the argument that Congress intended to limit the type of secured new value excluded from § 547(c)(4) to consensual security agreements.

Based upon the above analysis, this court must hold that the new value extended by the defendant was not secured by a security interest. Accordingly, the defendant is entitled to set off the subsequent advances of new value against the preferential transfers. Since the defendant has established that sufficient amounts of new value were extended subsequent to the preferential transfers to offset these transfers, the defendant's motion for summary judgment must be GRANTED.

IT IS, THEREFORE, SO ORDERED.