In re H & S TRANSPORTATION
CO., INC., Debtor.

C. Bennett HARRISON, Jr.,
Trustee, Plaintiff,

v.

UNITED LIBERTY LIFE INSURANCE
COMPANY, Defendant.

C. Bennett HARRISON, Jr.,
Trustee, Plaintiff,

v.

BRENT TOWING COMPANY,
INC., Defendant.

Bankruptcy No. 381–02803.
Adv. Nos. 383–0585, 383–0586.

United States Bankruptcy Court,
M.D. Tennessee.

Feb. 17, 1987.

442

T. Larry Edmondson, Nashville, Tenn., for plaintiff.

M. Taylor Harris, Jr., Nashville, Tenn., for defendant United Liberty Life Ins. Co.

Harry D. Lewis, Nashville, Tenn., for defendant Brent Towing Co., Inc.

## MEMORANDUM

GEORGE C. PAINE, II, Chief Judge.

The trustee seeks to recover from United Liberty and Brent Towing, as avoidable preferences, payments made by the debtor, H & S Transportation, to fuel suppliers. Since the trustee established the elements of a preference action and United Liberty and Brent Towing failed to do so on their defenses, this court finds that the trustee may recover $149,586.98 from United Liberty and $26,250.73 from Brent Towing as preferential transfers.

The following constitute findings of fact and conclusions of law pursuant to Bankr. R. 7052. This is a core proceeding. 28 U.S.C. § 157(b)(2)(A).

## FACTS

United Liberty ("United") owned the towboat VOLUNTEER STATE and Brent Towing ("Brent") owned the MARGARET BRENT. Inland Transportation Company ("ITC") chartered these vessels from United and from Brent and hired the debtor, H & S Transportation ("H & S" or "debtor"), to operate the vessels for $2,750 per day plus expenses. The debtor invoiced ITC for this service in advance on a monthly basis and for expenses as they became due.

H & S filed its bankruptcy petition on September 4, 1981. During the 90–day period before filing the petition, the debtor paid various fuel suppliers ("suppliers" or "vendors") for fuel which the debtor purchased on credit in the amount of $160,-032.55 on account of the VOLUNTEER

STATE[1] and $55,805.16 on account of the MARGARET BRENT[2].

The trustee asserts that the boat owners, United and Brent, received indirect prefer-

1. The following table reflects transfers to entities in payment for goods and services provided to the VOLUNTEER STATE for which recovery is sought from United.

| | Date of Transfer* | Date Goods or Services Provided | Provider & Type Goods or Services | Amount of Transfer | Pretrial Order Page Number, Stipulation Number, and Exhibit Number |
|---|---|---|---|---|---|
| #1 | 6/11/81 6/12/81 | 4/27/81 | Mobile Oil— petroleum prod. | $ 1,571.85 | p. 27, 4(b)(2), Ex. 7(b) |
| #2 | 6/25/81 7/30/81 | 4/27/81 | St. Louis Fuel & Supply—diesel fuel | $56,624.40 | p. 25, 3(a), Ex. 6 |
| #3 | 6/25/81 | 5/16/81 | Helena Fuel & Harbor Service— diesel fuel | $50,394.15 | pp. 32–33, 6(b), Ex. 13(a) |
| #4 | 6/29/81 7/6/81 | 9/80 | Mobile Oil— petroleum prod. | $ 358.30 | p. 29, 4(b)(5), Ex. 7(e) |
| #5 | 7/2/81 8/13/81 | 5/4/81 | Point Landing Fuel Co.—diesel fuel | $30,905.97 | p. 24, 2(i), Ex. 5 |
| #6 | 7/10/81 7/16/81 | 4/27/81 | Mobile Oil— petroleum prod. | $ 3,576.00 | p. 29, 4(b)(6), Ex. 7(f) |
| #7 | 7/16/81 7/21/81 | 5/13/81 5/27/81 | Mobile Oil— petroleum prod. | $ 1,811.02 2,682.00 | p. 30, 4(b)(7), Ex. 7(g) |
| #8 | 7/23/81 8/13/81 | 6/11/81 | Mobile Oil— petroleum prod. | $ 1,663.29 | pp. 30–31, 4(b)(8), Ex. 7(h) |
| #9 | 8/25/81 (wire transfer— $20,000.00) | 5/16/81 | Helena Fuel & Harbor Service— diesel fuel | $ 445.57 | pp. 33–34, 6(c) & (e), Ex. 14(b) |
| #10 | 8/28/81 (wire transfer— $10,000.00) | 5/26/81 | Helena Fuel & Harbor Service— diesel fuel | $10,000.00 | pp. 33–34, 6(d) & (e), Exs. 14(a)–(e) |
| Total Transfers: | | | | | $160,032.55 |
| Transfers not tied to this vessel: | | | # 9 | $ 445.57 | |
| | | | #10 | $10,000.00 | |
| | | Total: | | | $ 10,445.57 |
| | **Net Transfers:** | | | | $149,586.98 |

*The first date is the date on the check. The second date is the date the check cleared the debtor's bank account.

2. The following table reflects transfers to entities in payment for goods and services provided to the MARGARET BRENT for which recovery is sought from Brent. [Footnote continued on next page].

ences when the debtor paid the fuel suppliers during the statutory period. These payments released maritime liens which had automatically attached to the boats when the debtor charged the fuel. The releasing of the liens during this period would then benefit United and Brent pursuant to § 547(b)(1).

United and Brent contend that the trustee failed to establish the existence of liens on the towboats and failed to establish an actionable preference.

## I. EXISTENCE OF LIENS

Under maritime law, a lien attaches to a vessel when the owner or a person authorized by the owner purchases necessaries for the vessel. 46 U.S.C. § 971. Persons authorized to procure supplies and necessaries include the managing owner, any person entrusted with the management of the vessel at the port of supplies, and those with apparent authority. 46 U.S.C. § 972.

▪ United and Brent argue that under the terms of the debtor's charter agreement the debtor had no actual authority to grant liens on the vessels. Article VI of the charter agreement states:

> Neither Charterer nor any of its officers, agents or employees shall have any right, power or authority to create, incur, suffer or permit to be placed or imposed upon the vessel any maritime or other lien, encumbrance or charge whatsoever, or to incur debt or obligation or charge upon the credit of the vessel, except for salvage.

However, § 972 allows a lien to attach when those with apparent authority purchase necessaries.

The record establishes that the debtor had apparent authority to procure fuel for the vessels and that the debtor's act of procuring fuel was sufficient to create an automatic maritime lien pursuant to 46 U.S.C. § 971.

▪ Further, the court finds that the payments to the suppliers during the preference period extinguished the maritime liens which had attached to United's and Brent's vessels. However, the extinguishing of a lien during the preference period

| | Date of Transfer* | Date Goods or Services Provided | Provider & Type Goods or Services | Amount of Transfer | Pretrial Order Page Number, Stipulation Number, and Exhibit Number |
|---|---|---|---|---|---|
| #1 | 6/5/81 6/10/81 | 4/16/81 | Mobile Oil— petroleum prod. | $ 1,621.35 | pp. 26–27, 4(b)(1), Ex. 7(a) |
| #2 | 6/11/81 6/29/81 | 4/10/81 | Point Landing Fuel Co.—diesel fuel | $19,806.08 | p. 31, 5(b), Ex. 8 |
| #3 | 7/1/81 7/10/81 | 5/24/81 | St. Louis Fuel & Supply Co.—cash advance | $ 200.00 | p. 25, 3(b), Ex. 6 |
| #4 | 7/16/81 7/21/81 | 5/8/81 | Mobile Oil— petroleum prod. | $ 3,895.62 | pp. 29–30, 4(b)(7), Ex. 7(g) |
| #5 | 7/23/81 8/13/81 | 6/17/81 | Mobile Oil— petroleum prod. | $ 363.84 | pp. 30–31, 4(b)(8), Ex. 7(h) |
| #6 | 8/25/81 (wire transfer— $30,000.00) | 5/19/81 | Helena Fuel & Harbor Service— diesel fuel | $29,554.43 | pp. 33–34, 6(c) & (e), Ex. 14(a) |

| | | | |
|---|---|---|---|
| Total Transfers: | | | $55,805.16 |
| Transfers not tied to this vessel: | # 6 | | $29,554.43 |
| **Net Transfers:** | | | **$26,250.73** |

*The first date is the date on the check. The second date is the date the check cleared the debtor's bank account.

does not automatically give rise to an avoidable preference.

## II. REQUIREMENTS OF PREFERENCE ACTION

Section 547 provides that the trustee "may avoid any transfer of an interest of the debtor in property

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition ...

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title; ...."

First, United and Brent contend that the preference action fails because the funds used to extinguish the lien were not property of the debtor.

## A. PROPERTY OF THE DEBTOR

United and Brent concede that funds from H & S's account were used to pay the fuel invoices. However, they assert that the funds were held in trust by H & S for ITC and thus were not property of the debtor.

As support, United and Brent point out that the charter agreement required ITC to promptly pay all bills incurred in the operation of the towboats and that ITC's accounts payable ledger did not list the invoices as outstanding obligations. United argues that this absence, coupled with ITC's obligation under the charter, suggests that the invoices were in fact paid with ITC's money.

The record provides the court with no guidance concerning ITC's bookkeeping methods and the accuracy of its accounts payable ledger to support United's inference. From the evidence the court might easily infer that ITC maintained poor financial records. United provided no other evidence. Accordingly, the court finds that the funds used to pay the invoices were property of the debtor.

## B. TO OR FOR THE BENEFIT OF A CREDITOR

United and Brent assert that they are not creditors of the estate. The Bankruptcy Code defines "creditor" as any "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor". 11 U.S.C. § 101(9).

The Code defines "claim" as any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured". 11 U.S.C. § 101(4).

The court finds that United and Brent are creditors. The trustee established the existence of liens on United's and Brent's boats. These liens made United and Brent secondarily liable on the fuel debts if the debtor failed to pay. As a result of this liability, United and Brent held contingent indemnity claims against the debtor. These claims are sufficient to classify United and Brent as creditors under the Bankruptcy Code.

United and Brent further assert that even if they are creditors, the trustee failed to show that the transfers benefitted them.

The facts indicate a clear benefit conferred upon United and Brent. The extinguishing of their contingent claims decreased their potential liability to the suppliers.

This finding is reinforced by United's and Brent's past actions where both paid substantial sums to various suppliers to release maritime liens on the boats. The court is convinced that neither United nor Brent would have paid the suppliers absent some benefit.

## C. INSOLVENCY

United and Brent contend that the trustee did not establish the debtor's insolvency at the time of the transfers. The trustee relies on the presumption of insolvency pro-

vided in § 547(f) and on the testimony of accountant David Bennett.

The Bankruptcy Code defines "insolvent" as a "... financial condition such that the sum of such entity's debts is greater than all of such entity's property at a fair market valuation...." 11 U.S.C. § 101(29).

Courts define "fair valuation" as "the reasonable estimate of what could be realized from the assets by converting them into or reducing them to cash under carefully guarded, if not ideal, conditions". *Fulghum Construction Co.*, 7 B.R. 629, 632 (Bankr.M.D.Tenn.1980). For cases under the Bankruptcy Code, *see Foley v. Briden (In re Arrowhead Gardens, Inc.)*, 32 B.R. 296, 299 (Bankr.D.Mass.1983); *Jahn v. Reading Bodyworks, Inc. (In re A. Fassnacht and Sons, Inc.)*, 45 B.R. 209, 217 (Bankr.E.D.Tenn.1984).

This court finds that the trustee established the debtor's insolvency. Mr. Bennett testified that in his professional opinion he believed the company to be insolvent during the ninety days prior to the filing of the bankruptcy petition and that the debtor's financial records would provide little help in determining solvency, since they would show the book value of the debtor's assets and not the fair market value. He also stated that due to accounting procedures the debtor's financial records would show values for leasehold items which do not comport with the fair market value. Based upon his uncontroverted testimony in addition to the presumption of insolvency, the court finds the debtor was insolvent at the time of the transfers.

## D. DIMINUTION OF THE ESTATE

United and Brent finally contend that the transfers did not diminish the debtor's estate.

Depletion of the estate became an implied requirement of a preference action under the Bankruptcy Act. *Abramson v. St. Regis Paper Co. (In re Abramson)*, 715 F.2d 934 (5th Cir.1983); *Nicholson v. First Investment Co.*, 705 F.2d 410 (11th Cir. 1983); *Peters v. White County Farm Supply, Inc. (In re Templeton)*, 1 B.R. 245 (Bankr.E.D.Tenn.1979).

The Bankruptcy Code, however, does not expressly incorporate the requirement of proving diminution of the estate. Some courts continue to require the showing of depletion of the estate. *Brent Explorations, Inc. v. Karst Enterprises, Inc. (In re Brent Towing Explorations, Inc.)*, 31 B.R. 745 (Bankr.D.Colo.1983). More frequently, courts mention depletion of the estate without stating whether it is a required element of a preference action. *Hassett v. Far West Federal Savings and Loan Ass'n (In re O.P.M. Leasing Services, Inc.)*, 40 B.R. 380, 395 (Bankr.S.D.N.Y. 1984), *aff'd*, 44 B.R. 1023 (S.D.N.Y.1984).

In ordinary preference cases, where all the Code requirements are shown, proof that the debtor transferred property of the debtor also demonstrates depletion of the estate. *Brown v. First National Bank*, 748 F.2d 490, 491 (8th Cir.1984). The doctrine of estate depletion cannot in such circumstances be used as an "extra test to be applied after the elements of a preference have been proved". *Derryberry v. Peoples Banking Co. (In re Hartley)*, 55 B.R. 770 (Bankr.N.D.Ohio 1985).

This court remains unconvinced that the Code requires a showing of depletion. However, even under that assumption that such a test exists, the court finds that it has been met.

United and Brent hold contingent unsecured claims against the debtor. If the debtor liquidated under Chapter 7, the debtor would have only paid United and Brent a percentage of their claim. Had the debtor failed to pay the suppliers and instead kept the funds, more dollars would have been available to pay a greater percentage to the unsecured claims. Based upon this analysis, the court finds that the payments diminished the estate.

## III. DEFENSES

United and Brent raise three defenses: the transfer was intended as a contemporaneous exchange for new value under § 547(c)(1); the creditor gave new value not secured by an otherwise unavoidable

security interest under § 547(c)(4); and *res judicata*.

## A. CONTEMPORANEOUS EXCHANGE FOR NEW VALUE

United and Brent argue that the trustee may not avoid the transfers since United and Brent provided new value to the debtor as required under § 547(c)(1)(A).

To establish a § 547(c)(1)(A) defense, United and Brent have the burden of proving each element of the defense. *In re Saco Local Development Corp.*, 25 B.R. 876, 879 (Bankr.D.Me.1982). Specifically, United and Brent must establish that the "... transfer was intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor". 11 U.S.C. § 547(c)(1)(A).

The Code defines "new value" as "money or money's worth in goods, services or new credit, or release by a transferee of property previously transferred to such transferee ..., but does not include an obligation substituted for an existing obligation". 11 U.S.C. § 547(a)(2).

United and Brent contend that a release of a lien by a third party provides a debtor with new value and cite *In re Dick Henley*, 38 B.R. 210 (Bankr.M.D.La.1984) in support of their proposition.

In *Henley*, a subcontractor performed $90,000 worth of services for the debtor/contractor and, under Louisiana law, also had a lien in that amount against the owner of the property. The owner, in turn, had a contingent indemnity claim against the debtor/contractor.

The debtor/contractor paid the subcontractor within the preference period. Upon payment, the subcontractor released its claim against the debtor and the owner released its indemnity claim against the debtor.

The court held that this release of claims constituted new value for the purposes of § 547(c)(1). This court is not persuaded by the § 547(c)(1) reasoning used in *Henley*.

The *Henley* court began its analysis by stating that "a release of property from a third party constitutes 'new value' for purposes of § 547(c)(4) (subsequent new value) but not for the purposes of § 547(c)(1) because that subparagraph requires that the new value be given to the debtor and not 'for the benefit of' ".

The *Henley* court altered that result by rewriting the Code. "There is no apparent reason for this difference in language, and such a reading would appear to be incongruous under the circumstances of the case at bar. To achieve a level of consistency, therefore, a § 547(a)(2) release of property to a third party must be 'new value given to the debtor' when that release inures to the benefit of the debtor on account of the release of the claim of a third party against the debtor".

■ This court declines to expand the reading of § 547(c)(1) and holds that a release of a lien by a third party does not provide new value "to the debtor" for purposes of § 547(c)(1).

■ United and Brent also contend that their forbearance in terminating the charter agreement provided the debtor with new value.

This court agrees with the majority of the decisions on this issue and holds that forbearance does not constitute new value as defined in § 547(a)(2). *In re Airconditioning, Inc. of Stuart*, 55 B.R. 157, 159 (Bankr.S.D.Fla.1985); *In re Alithochrome Corp.*, 53 B.R. 906, 913 (Bankr.S.D.N.Y. 1985); *In re Air Florida Systems, Inc.*, 50 Bankr. 653, 656 (Bankr.S.D.Fla.1985); *Matter of Lario*, 36 B.R. 582, 584 (Bankr.S.D. Ohio 1983).

## B. NEW VALUE UNDER § 547(c)(4)

■ United and Brent also raise the § 547(c)(4) defense. Section 547(c)(4)(A) provides that "the trustee may not avoid under this section a transfer to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor not secured by an otherwise unavoidable security interest".

In this instance the court agrees with the reasoning in *Henley* and holds that a

§ 547(c)(4) defense is not available to either United or Brent.

Section 547(c)(4) requires that a creditor extend new value after the transfer. When the debtor made payments to the supplier the claims were simultaneously released. Since the release was simultaneous, there was no extension of new value after the transfer, and the defense fails.

## C. RES JUDICATA

■ United and Brent finally contend that this court's decision in *Harrison v. St. Louis Supply Co. (In re H & S Transportation)*, 45 B.R. 233 (Bankr.M.D.Tenn. 1984), precludes the trustee from avoiding this transfer.

That case held that the trustee could not avoid a transfer from the supplier because the transferee had advanced subsequent new value to the debtor. United contends that the *Harrison* holding concludes that the estate was not diminished, thus precluding the existence of a preferential transfer.

Under § 550, two preferential transfers may result from one transaction. Courts analyze each transaction separately in order to determine whether the trustee may recover against a specific creditor. *Goldberger v. Davis J. Corrugated Box Corp. (In re Mercon Industries)*, 37 B.R. 549, 552 (Bankr.E.D.Pa.1984) (a finding of liability on one transfer is independent of the other).

In *Harrison*, this court held that the supplier established a § 547(c)(4) defense. A § 547(c)(4) defense was not established in favor of United or Brent, and thus the trustee is not precluded from proceeding against them.

Since the trustee established the elements of a preferential transfer and United and Brent failed to establish the elements of a defense, this court holds that the trustee may recover $149,586.98 from United and $26,250.73 from Brent as preferential transfers.

An appropriate order will be entered.