In the Matter of Littleton A. (Larry) PARR, Peggy H. Parr, Debtors.

Littleton A. (Larry) PARR, Peggy H. Parr, Plaintiffs,

v.

FIRST ALABAMA BANK OF HARTSELLE, Defendant.

FIRST ALABAMA BANK OF HARTSELLE, A Banking Corporation, Plaintiff,

v.

Littleton A. (Larry) PARR, Peggy H. Parr, United States of America (FHA), Continental Grain Company, and Frances Bissell, as trustee, Defendants.

Bankruptcy No. BK 82–06405.

AP 83–0082, AP 83–0115.

United States Bankruptcy Court, N.D. Alabama, N.D.

May 18, 1983.

Albert P. Brewer, Brewer, Lentz, Nelson & Whitmire, Decatur, Ala., for debtor-plaintiff.

A.J. Coleman, Decatur, Ala. for defendant, First Alabama of Hartselle.

MEMORANDUM OPINION

EDWIN D. BRELAND, Bankruptcy Judge.

On October 29, 1982 the debtors, Littleton and Peggy Parr, filed a joint petition under Chapter 7 of the United States Bankruptcy Code. In January of 1983 the debtors filed an adversary proceeding against the First Alabama Bank of Hartselle to determine the extent of the bank's secured claim, under a real estate mortgage, pursuant to 11 U.S.C. Section 506(a). The following month, First Alabama Bank filed an adversary proceeding against the debtors requesting the Court to order the trustee's abandonment set aside, order all property surrendered to the trustee, and to grant the trustee authority to sell the debtors' real estate. On February 25, 1983 the two adversary proceedings were consolidated for trial. Subsequently, the bank filed a motion to dismiss the debtors' action on the grounds they lacked standing to bring an action under Section 506(a). This motion was denied on March 3, for reasons to be set out in this opinion.

Trial in this cause was set and heard on April 1 and May 6, 1983. The bank has argued that the debtors' property is an asset of the estate, and that until the trustee abandons the real estate the debtors lack standing as parties in interest under Section 506(a). The bank's argument rests on the applicability of 506 to proceedings under Chapter 7. The Court will agree that the primary application of 506(a) is in Chapter 11 and 13 proceedings where disposition or sale of property is not contemplated, and the classification of a claim as secured or unsecured is necessary for case administration or the successful completion of a Chapter 11 or 13 plan. The Court cannot agree, however, that 506(a) has no application to a Chapter 7 proceedings prior to abandonment.

In the present case the trustee filed a notice of intent to abandon the property in

question on January 19, 1983. On January 28 the bank objected to the abandonment, and the Court entered an Order, dated February 25, allowing the trustee to withdraw her notice of intent to abandon, and make a diligent effort to negotiate a private sale of the property. Up to the date of trial the trustee and the First Alabama Bank of Hartselle have made numerous inquiries to potential buyers; but this effort has resulted in no offers to purchase. Over $600,-000.00 is owed on the property, and all parties concerned agree there is no value over and above the indebtedness for benefit of the estate.

If the Court were to accept the bank's argument that the debtors lack standing under 506(a), then the trustee would ultimately abandon the property, and the mortgage holders would proceed to foreclosure. Such a result is contrary to the provisions of the Code which allow the debtors to protect their rights in their homestead. As pointed out in Collier on Bankruptcy, "... section 506(a) is of value to a debtor in connection with the debtor's right to reaffirm a debt under Section 524 of the Code and the right of redemption given by Section 722". 4 Collier on Bankruptcy, Section 506.04 at 506–11 (15th ed. 1982). Title 11 Section 103(a) makes Section 506 equally applicable to cases administered under Chapters 7, 11 or 13. In addition, several Bankruptcy cases have recognized the Chapter 7 debtor's right under 506(a) to avoid a real estate mortgage to the extent it exceeds the value of the property, *In re Tanner,* 14 B.R. 933, 8 B.C.D. 347 (Bkrtcy., W.D.Pa.1981), and *Matter of Vigne,* 18 B.R. 946 (Bkrtcy., W.D.Pa.1982), at least as to those mortgages recorded subsequent to the effective date of the Code.

Of the three mortgages taken on the debtors' farm, only the first mortgage, to Farmers Home Administration for approximately $360,000.00, was recorded prior to October 1, 1979. The First Alabama Bank of Hartselle holds the second and third mortgages, recorded on January 1, 1980 and December 30, 1980.

■ In accordance with the above, the Court holds that the debtor who has filed a Chapter 7 petition, may maintain an action under 11 U.S.C. Section 506(a) to determine that extent of a mortgagee's secured claim. What remains for the Court to decide is the extent to which the Parr's real estate secures the two mortgages of the First Alabama Bank of Hartselle.

Both the second and third mortgages held by the bank allegedly secure notes totaling approximately $316,000.00. Section 506(a) clearly sets out the extent to which the banks would be deemed secured:

"(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to set-off under Section 553 of this title, is a secured claim *to the extent of the value of such creditor's interest* in the estate's interest in such property, ..., and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to set-off is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, ..." 11 U.S.C. Section 506(a) (emphasis added).

■ To determine "the extent of the value of such creditor's interest", the Court must determine what the bank would receive from the real estate upon its disposition by customary and commercially reasonable means. *In re Klein,* 10 B.R. 657, 7 B.C.D. 668 (Bkrtcy., E.D.N.Y.1981), and *In re Paige,* 13 B.R. 713 (Bkrtcy., S.D.Ohio 1981). Since both the trustee and the bank have been unable to locate a potential buyer or negotiate a private sale, the alternatives left for disposition of the property are a Court ordered public auction, with the consent of the lienholders, or an abandonment of the estate's interest followed by a foreclosure proceeding. Under all of these alternatives, the costs of sale must be subtracted in order to determine the value of the bank's interest in the property. "The distinction to be drawn is between the value of the property and the value of the creditor's interest in such property... This latter value properly takes into account costs of sale and justifies a 10% factor in deter-

mining the cash amount realizable by a lien creditor in real estate." *In re Ward,* 13 B.R. 710, at 712 (Bkrtcy., S.D.Ohio 1981).

This does not mean that forced sale or liquidation value is to be utilized in determining the extent of the bank's secured status. What it does mean, however, is that before any portion of the second or third mortgage can be deemed secured, the first mortgage, plus reasonable costs of sale, must first be satisfied from the value established by the Court.

At trial, the Court heard testimony of three witnesses as to the value of the property at the time the debtors filed their petition in bankruptcy. Littleton Parr, a poultry operator, testified that the two tracts comprising 280 acres had a market value of $276,000.00. Mr. Bonds, a loan officer and a rural appraiser with Farmers Home Administration, set the value at $258,000.00. While it is true that the poultry industry has been generally depressed for some time now, the Court recognizes that both Mr. Parr and Mr. Bonds have an interest in seeing the property valued as low as possible. Mr. Parr, if he is to save his farm, must reduce his debt service to a level commensurate with the income that can be generated by his poultry operation. Mr. Bond represents the first mortgagee, who is the party who will benefit first from the debtors' decision to reaffirm the debt ultimately determined to be secured.

The bank's witness, a Mr. Broadhead, has had 18 years of experience in making rural appraisals. Mr. Broadhead testified that the value of the two tracts at the time the petition was filed was $441,500.00. As to the value of the 40 acre tract, Mr. Broadhead testified that the five 26 year old poultry houses had depreciated 75% of their value, and had a value in October of 1982 of approximately $19,000.00 per house. The Court is of the opinion that this valuation is inflated in light of the fact that one of Mr. Broadhead's comparable sales had two poultry houses of similar type, constructed in 1979, valued at $33,000.00 per house in November of 1982. The Court finds that the 26 year old poultry houses, even though partially renovated, cannot be worth more than $10,000.00 per house. This valuation is

supported by the fact that poultry houses of this type have an average useful life of 25 years, and in a few years will need to be replaced by more efficient, environmentally controlled houses. What the Court finds of even greater significance is Mr. Broadhead's testimony that if he had known that active attempts over the last six months to sell the property had resulted in no offers, this would have affected the appraised value he placed on the debtors' property. In addition, Mr. Broadhead's appraisal included the value of leased equipment located in two newer poultry houses, which is not owned by the debtors.

Upon considering the factors stated above, and all the testimony and evidence introduced at trial, the Court finds that the market value at the time the debtors filed their petition in bankruptcy was $365,000.00. In addition the Court finds that reasonable costs of sale at a rate of 10% of the fair market value would reduce the proceeds available for distribution to the mortgagees to approximately $328,500.00. The balance due on the first mortgage of Farmers Home Administration as of May 16, 1983 totals approximately $361,847.28. As a result, upon sale of the subject property, no proceeds would be available for distribution to satisfy the mortgage indebtedness of the First Alabama Bank of Hartselle.

An appropriate order in accordance with the findings and conclusions of this opinion will be entered.