In re Wayne Rodney LINDSEY, Margaret A. Lindsey, Debtors.

Wayne Rodney LINDSEY; and, Margaret A. Lindsey, Plaintiffs,

v.

The FEDERAL LAND BANK OF ST. LOUIS; and, United States of America, acting through Farmer's Home Administration, a division of the United States Department of Agriculture, Defendants.

Bankruptcy No. 185–00938.
Adv. No. 185–0124.

United States Bankruptcy Court, C.D. Illinois.

March 19, 1986.

See also, Bkrtcy., 59 B.R. 168.

Carl F. Reardon, East Peoria, Ill., for plaintiffs/debtors.

Douglas R. Lindstrom, Galesburg, Ill., for defendant/Federal Land Bank.

L. Lee Smith, Asst. U.S. Atty., Peoria, Ill., for defendant/Farmers Homes Admin.

## OPINION

LARRY LESSEN, Bankruptcy Judge.

*Introduction*

The plaintiffs/debtors, Wayne Rodney Lindsey and Margaret A. Lindsey, filed a Complaint to Determine Secured Status pursuant to the provisions of Section 506(d) of the Bankruptcy Code against defendants/secured creditors, the Federal Land Bank of St. Louis and the United States of America, acting for the Farmer's Home Administration. The defendants filed an answer and affirmative defense.

The plaintiffs filed a voluntary petition in bankruptcy under Chapter 7 of the Bankruptcy Code and an order of relief was entered. At the time of their filing they were owners of approximately 80 acres of farm land located in Knox County, Illinois, consisting of tillable acreage, permanent pasture, waterways, roads, building site with a residence, hog support building, grain storage structures, wells, residence and extensive hog confinement structures.

It is undisputed that there is a first mortgage of $208,665.59 on the farm in favor of the Federal Land Bank of St. Louis and a second mortgage of $341,450.00 in favor of Farmer's Home Administration. The parties agree that the fair market value of the farm at the present time is less than the total of the first and second mortgages. There is a substantial difference of opinion as to what is the fair market value.

The court received testimony from four appraisers. The appraisals of Owen A. Aruin and Robert Tracy presented by the plaintiffs were $141,200.00 and $102,500.00, respectively. The appraisal of Richard C. Geeger on behalf of the Federal Land Bank of St. Louis was for $233,000.00. Finally, the appraisal submitted by the manager of the local Farmer's Home Administration office was for $320,466.00.

The plaintiffs contend that the court has jurisdiction under Section 506(d) to value the defendants' security which is the real

estate and improvements and to the extent that mortgages exceed the fair market value of the real estate and improvements, declare them void. In other words the defendants shall retain a secured claim with a lien upon the real estate only for the appraised value of the property and to the extent their claim exceeds the fair market value of the real estate it shall be treated as an unsecured claim and this amount is not secured by a lien upon the property. In addition, the plaintiffs ask the court once it has valued the real estate to determine how, when and what amount the plaintiffs must pay the defendants to retain title to the property free and clear of the defendants' liens.

The defendants take the position that the court does not have to reach the question of valuation of the real estate; rather, the complaint must be dismissed for failure to state a claim because a Chapter 7 debtor cannot utilize Section 506(d) to redeem his interest in the real estate. The defendants argue that Section 506(d) should not be utilized because Section 722, the Code provision allowing redemption, applies only to personal property; lien avoidance would allow a Chapter 7 debtor to retain something he could not retain in a Chapter 11 or Chapter 13 bankruptcy and the lien avoidance would deprive defendants of a property interest without adequate compensation.

*Issues*

Two tasks are before the court. The first is to decide whether Section 506(d) of the Bankruptcy Code allows for the avoidance of a real property mortgage to the extent that the mortgage exceeds the value of the property. The second is to decide whether the Bankruptcy Code authorizes the court in a Chapter 7 no asset case to rewrite the amount and payment terms of a debtor's mortgage. Section 506 of the Bankruptcy Code provides in relevant part:

Section 506. Determination of Secured Status.

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to set off under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to set off, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to set off is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of evaluation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

. . . .

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) Such claim was disallowed only under Section 502(b)(5) or 502(3) of this title; or

(2) Such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under Section 501 of this title.

11 U.S.C. Section 506 (1984) (emphasis added).

■ The courts are divided over the application of Section 506 to avoid a lien on real property in a Chapter 7 case. The leading case on point is *In re Tanner,* 14 B.R. 933 (Bkrtcy.W.D.Penn.1981) in which it was held that a Chapter 7 debtor can use the provisions of Section 506 to avoid a lien on real property to the extent that the amount of the lien exceeds the value of the collateral. That opinion was cited with approval in several cases and most recently in *In re Bain,* 52 B.R. 58 (Bkrtcy.W.D.Va. 1985). *See also, In re Lyons,* 46 B.R. 604 (Bkrtcy.N.D.Ill.1985); *In re Frost,* 19 B.R. 804,808 (Bkrtcy.Kansas 1982); *In re Spadel,* 28 B.R. 537, 539 n. 3 (Bkrtcy.E.D.Penn. 1983); *In re Parr,* 30 B.R. 276, 277 (Bkrtcy.N.D.Ala.1983); *Brace v. State Farm Mutual Insurance,* 33 B.R. 91, 93–94 (Bkrtcy.S.D.Ohio 1983); *In re Bracken,* 35 B.R. 84, 85 (Bkrtcy.E.D.Penn.1983); *In re Gibbs,* 44 B.R. 475, 478–79 (Bkrtcy.Minn.

**22**

1984); and *In re Roth,* 38 B.R. 531, 540 (Bkrtcy.N.D.Ill.), *aff'd,* 43 B.R. 484 (N.D.Ill. 1984). The court is persuaded by the analysis of these courts and is confident that the *Lyons* decision presents an accurate summary of divergent positions on this question. However, because this question is an important one before several courts, this court will elaborate on the response to these divergent views.

The arguments against the avoidance of liens on real estate find their roots in a long line of cases which allow a creditor with a loan secured by a lien to ignore the bankruptcy proceeding and look to the lien for the satisfaction of the debt. *See Long v. Bullard,* 117 U.S. 617, 620–21, 6 S.Ct. 917, 918, 29 L.Ed. 1004 (1886). Section 506(d), however, allows a party in interest to petition the bankruptcy court to rule on the validity of a lien; that is, to determine whether the collateral falls short on the amount of the claimed debt, and if there is a shortfall, to declare that portion of the debt unsecured. A lien is invalid and a bankruptcy court may void it, to the extent it is unsecured.

Another of the early arguments against avoidance attacks the constitutionality of the bankruptcy court's power to void a lien as allowed by Section 506. Such objections are based upon the right to substantive due process which prohibits the taking of property by the government without just compensation. This objection was fully addressed in *In re Tanner,* 14 B.R. 933 (Bkrtcy.W.D.Penn.1981). The response to this objection not only establishes the constitutionality of the use of 506(d) to void liens, but also sets forth the policy guiding the bankruptcy court in this case:

> First, voiding a mortgage to the extent it is undersecured is not an actual deprivation or property. The lienholder is deprived of an empty legal right rather than a valuable property right. If a totally undersecured mortgagee brought an action to foreclose, he would not receive anything but the extinguishment of his lien. All that Section 506(d) does is allow in bankruptcy what would occur out-side bankruptcy in a foreclosure sale—the extinguishment of a lien lacking any present property value. The fact that a mortgagee may have some sort of expectancy interest based upon anticipated appreciation or increase in equity does not require a different conclusion, since it would also be extinguished in a foreclosure proceeding.

14 B.R. at 938.

The realities of foreclosure proceedings bear out the conclusions of the *Tanner* court. Rarely will a bank foreclose and not immediately sell the property for its current value. The mortgagees's right to maintain ownership of the property for a certain period of time after foreclosure does not change the *Tanner* analysis. To the extent that this right to "manage" property acquired pursuant to a foreclosure is valuable, it may be incorporated into the Court's determination of the value of the property. No property is taken from a lienholder in Section 506 proceedings. *See In re Tarnow,* 749 F.2d 464, 466 (7th Cir.1984) (a lien is "property," but unsecured claim is not a valid lien). An examination of the interests of the lienholders to the Lindsey's properties support this conclusion. *Cf. In re Mahaner,* 34 B.R. 308, 309–10 (Bkrtcy.W.D.N.Y.1983).

Plaintiffs claim the fair market value of the real estate securing the liens of the Federal Land Bank of St. Louis and Farmer's Home Administration is somewhere between $102,500 and $141,200. If the court were to accept these allegations, the defendant lienholders are certainly unsecured. Should this lien have been exercised independently of the bankruptcy proceeding, the defendants would receive no more than the liquidated value of the property. There is no evidence that the bank would be able to realize any benefit from the ability to possess and manage the property after foreclosure. The proceeding requested by the debtors only allows in court what would occur outside of bankruptcy in a foreclosure sale.

The published cases in which courts ruled that 506(d) is inapplicable to real estate liens raise alternative arguments to

the constitutional challenge described above. *In re Cordes*, 37 B.R. 582 (Bkrtcy. C.D.Cal.1984); *In re Mahaner*, 34 B.R. 308 (Bkrtcy.W.D.N.Y.1983). In both of these cases the debtor sought a determination of the secured status of the lienholder on their real estate, after which they planned to redeem the property by paying the amount of the secured portion of the lien. The analysis pursued by the courts in these cases mistakenly focused upon the debtor's right to redeem his or her property in a Chapter 7 case, instead of upon the general applicability of Section 506 to "liens." The *Mahaner* court looked to 11 U.S.C. Section 722 as guidance in the interpretation of Section 506(d). Section 722 provides for the redemption of personal property by a debtor in a Chapter 7 proceeding.[1] The text of Section 722 allows only the redemption of personal, not real, property. Both the *Mahaner* and the *Cordes* courts concluded that Section 506(d) could not have authorized the voiding of real estate liens, and the subsequent redemption of the property by the debtor, given that the specific section of the Code which covers redemption excluded real estate liens. These courts followed a basic rule of statutory construction that a specific statute prevails over a general statute, (inclusio unius est exclusio alterius), to conclude that Section 506(d) does not apply to liens upon real estate.

The *Mahaner* and the *Cordes* courts allowed form to dictate over substance in their interpretation of Section 506(d). The better approach is to determine whether the drafters of the statute intended a general meaning to attach to the term "lien" in Section 506. The *Tanner* court viewed the legislative history of the pre–1984–amendment version of Section 506 and concluded that the drafters could not have intended

anything but a general, unconditional use of the term lien; nothing in the legislative history precluded the application of Section 506 to real estate mortgages. *See also* 3 Collier on Bankruptcy, Para. 506.3 at pp. 506–5 to 506–14 (15th ed. 1985).

The 1984 amendments could have been a vehicle for making explicit any implied legislative intent to narrow the application of Section 506 to only liens on personal property. Several bankruptcy court decisions interpreted Section 506 as applicable to real estate liens before the 1984 amendments were made law.[2] However, the Seventh Circuit decision, *In re Tarnow*, 749 F.2d 464 (7th Cir.1984), indicates, no such distinction was created by the amendments. The *Tarnow* decision contains an extensive analysis of the bankruptcy court's authority to void a lien on personal property. The focus of the court's analysis was an issue unrelated to the dispute *sub judice*. However, the decision sets forth the legislative history of the 1984 amendments to section 506 and it is clear from the analysis that the amendments were passed to clarify ambiguities in the application of Section 506. *Id.* at 465. Congress' failure to amend the section to narrow the definition of "lien" so as to exclude mortgages supports this court's conclusion that the meaning of "lien" is unqualified. No legislative history supports an interpretation of "lien" which is limited to personal property liens.

A line of cases which construe Section 522(f) also supports a broad interpretation of "lien" in Section 506. This section of the bankruptcy code allows a bankruptcy court to avoid certain kinds of liens on property which impair a claim exemption.[3] These cases indicate that bankruptcy courts routinely apply Section 522(f) to avoid judicial and statutory liens on real estate. *See In re Vigne*, 18 B.R. 946

---

**1.** 11 U.S.C. § 722 allows a debtor to:

redeem tangible personal property intended primarily for personal, family or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under Section 522 of this title or has been abandoned under Section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

**2.** *In re Walker*, 11 B.R. 43 (Bkrtcy.N.D.Ill.1981); *In re Tanner*, 14 B.R. 933 (Bkrtcy.W.D.Penn. 1981); *Brace v. State Farm Mutual Insurance*, 33 B.R. 91 (Bkrtcy.S.D.Ohio 1983); *In re Parr*, 30 B.R. 276 (Bkrtcy.N.D.Ala.1983); and *In re Bracken*, 35 B.R. 84 (Bkrtcy.E.D.Penn.1983).

**3.** 11 U.S.C. § 522(f) provides:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien

(Bkrtcy.W.D.Penn.1983); *In re Kalli*, 34 B.R. 191 (Bkrtcy.Vermont 1983); and *In re Rappaport*, 19 B.R. 971 (Bkrtcy.E.D.Penn. 1982).

Another argument advanced by those in opposition to the application of Section 506(d) to avoid real estate liens is the policy position that such a practice would discourage the use of the rehabilitative Chapter 11 and 13. These arguments are summarized in *In re Mahaner*, 34 B.R. 308, 309 (Bkrtcy. W.D.N.Y.1983). *Cf. In re Frost*, 19 B.R. 804 (Bkrtcy.D.Kansas 1982) (where IRS lien on real estate avoided pursuant to Section 506 in a Chapter 13 case). This argument requires both speculation about the Congressional intent and rejection of the equally significant policy objective of giving debtors a "fresh start" via Chapter 7 proceedings. As the *Tanner* Court noted: "If a real property mortgage is not avoidable to the extent it is undersecured, a pre-petition creditor will impair the Debtor's fresh start by partaking in this post-petition property acquisitions." 14 B.R. at 936.

It is the conclusion of the court that Section 506(d) may be utilized to avoid a lien on real estate to the extent that the lien is unsecured. It remains for the court to determine the fair market value of the collateral, a maturity date and a payment amount due on the secured component of the liens on the Lindsey real estate. The court is authorized in section 506 to void an unsecured portion of a lien; however, it may not, in a Chapter 7 bankruptcy, set up a repayment schedule for the benefit of a debtor desiring to acquire the property by installments. *In re Davis*, 20 B.R. 212 (Bkrtcy.C.D.Ill.1982). The debtor's remedy is limited to a proceeding to determine the value of the property securing the liens. The factors to be considered in this evalua-

tion vary (*See* 3 Collier on Bankruptcy, Para. 506.04 and 506–23 to 506–36); however, courts have generally agreed that the property should be valued as of the date of the commencement of the proceedings. *In re Parr*, 30 B.R. 276, 378 (Bkrtcy.N.D.Ala. 1983); *In re Tarrant*, 19 B.R. 360, 366 (Bkrtcy.D.Alaska 1982); *In re Tanner*, supra, 14 B.R. at 936; 3 *Collier on Bankruptcy*, Para. 506.04 at 506–36 (15th ed. 1985); *See In re Lyons*, 46 B.R. 604, 607 (N.D.Ill.1985). After such an evaluation, this Court is authorized to set out the procedures for the liquidation of security. The Debtors have no right to redeem their property; however, they may purchase it for the amount that the court determines represents a fair valuation.

### Conclusion

Based on the foregoing the Court finds that the plaintiffs can avoid the lien on the real estate to the extent that the amount of the claims exceed the fair market value of the real estate at the time the debtors filed their petition.

The court has reviewed the testimony of the appraisers and their written reports which were admitted as evidence to determine the fair market value of the real estate and its improvements. It seems clear to the court that in arriving at the fair market value it must be appraised as a unit having a substantial hog production operation. The court finds the appraisals of the plaintiff's witnesses were too low and that the one presented by the FHA was too high. The court found the appraisal of Robert Geeger to be the better opinion. His testimony was knowledgeable, fair and supported his written report. He was an excellent witness whose testimony the court finds to be the most credible of that presented. Utilizing his appraisal the

on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

    (1) a judicial lien; or

    (2) a nonpossessory, nonpurchase-money security interest in any—

    (A) household furnishings, household goods, wearing apparel, appliances, books, an-

imals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

    (B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

    (C) professionally prescribed health aids for the debtor or a dependent of the debtor.

court finds the fair market value of the property to be $233,000.00. Therefore, the Federal Land Bank of St. Louis is fully secured on its mortgage of $208,665.59 and the Farmer's Home Administration is secured on its second mortgage in the amount of $24,334.41 and unsecured in the amount of $317,115.60.

The Court further finds that in a Chapter 7 liquidation proceeding the Court has no authority to rewrite the terms and conditions of the security agreement. It is clear that if the debtor wishes to buy the security at the value established by the court it cannot be done on an installment basis without consent of the creditor. *In re Davis*, 20 B.R. 212 (Bkrtcy.C.D.Ill.1982). Therefore, the debtors will be required to pay the fair market value to the creditor within thirty (30) days from the date of this Order and failure to pay the full amount within that time will result in the lifting of the stay and allowing the secured creditors to proceed in the state court with a foreclosure complaint.