In re Kenneth W. O'LEARY and Sharon L. O'Leary, Debtors.

Kenneth W. O'LEARY and Sharon L. O'Leary, Plaintiffs,

v.

STATE OF OREGON, acting By and Through the DIRECTOR OF VETERANS' AFFAIRS, Defendant.

Bankruptcy No. 686–08399–W7.
Adv. No. 686–6129–W.

United States Bankruptcy Court, D. Oregon.

July 13, 1987.

Barry Taub, Eugene, Or., for plaintiffs.

Karen Stratton, Dept. of Justice, Salem, Or., for defendant.

## MEMORANDUM OPINION

ALBERT E. RADCLIFFE, Bankruptcy Consultant.

## BACKGROUND

The debtors, plaintiffs herein, filed their petition for relief under Chapter 7 of the Bankruptcy Code on July 21, 1986. Thereafter, plaintiffs commenced this adversary proceeding seeking to void, in part, the lien of the defendant pursuant to 11 U.S.C. 506(d).

Plaintiffs' complaint alleges that the defendant claims to hold a first mortgage on the residence of the debtors which secures a claim in the amount of $43,859.57 as of the date the Chapter 7 petition was filed. The complaint further alleges that the residence has a fair market value of $29,000; the secured claim of defendant should be allowed to the extent of $29,000 only, the balance due on said claim should be disallowed as a secured claim and the lien of defendant should be void to the extent it exceeds $29,000. In addition, the complaint prays for an order of this court that the mortgage shall be considered paid and satisfied to the extent of any balance due and owing on the claim in excess of $29,000.

Defendant has responded by filing a motion to dismiss plaintiffs' complaint on the basis that the complaint fails to state a claim upon which relief can be granted.

The parties have consented to a determination of this proceeding by the bankruptcy consultant. Accordingly, this opinion is entered pursuant to Miscellaneous Order No. 87–21 entered by the United States District Court for the District of Oregon. The court finds that this adversary proceeding is a core proceeding as defined in 28 U.S.C. 157.

It is well settled that a motion to dismiss admits the facts alleged in the complaint for the limited purpose of ruling on the motion. *In re Tenopir v. State Farm Mutual Company*, 403 F.2d 533 (9th Cir.1968).

Defendant contends that plaintiffs' complaint fails to state a claim upon which relief can be granted since 11 U.S.C. 506(d) does not authorize this court to void a lien arising from a note and mortgage in a Chapter 7 proceeding. Defendant relies heavily upon *In re Mahaner*, 34 B.R. 308 (Bankr.W.D.N.Y.1983) and certain other cases decided in line with that decision. *See In re Cordes*, 37 B.R. 582 (Bankr.C.D. Cal.1984) and *In re Maitland*, 61 B.R. 130 (Bankr.E.D.Va.1986).

## ISSUE

The sole issue before this court is whether a Chapter 7 debtor may use § 506(d) to void a lien on the debtors' real property to the extent it exceeds the value of the property (collateral).

## DISCUSSION

■ This appears to be a question of first impression in this district. The issue, however, has been thoroughly discussed by other courts and a split of authority has emerged. The majority view holds in favor of lien avoidance by the debtor. *See In re Tanner*, 14 B.R. 933 (Bankr.W.D.Penn. 1981); *In re Worrell*, 67 B.R. 16 (Bankr.C. D.Ill.1986); *In re Lindsey*, 64 B.R. 19 (Bankr.C.D.Ill.1986); *In re Lyons*, 46 B.R. 604 (Bankr.N.D.Ill.1985); *In re Gibbs*, 44 B.R. 475 (Bankr.D.Minn.1984); *In re Brace*, 33 B.R. 91 (Bankr.S.D.Ohio 1983); *In re Everett*, 48 B.R. 618 (Bankr.E.D. Penn.1985).

The minority view, for divergent reasons, holds that § 506(d) may not be used by a debtor to avoid a lien under the facts as presented in this case. *See In re Wolf*, 58 B.R. 354 (Bankr.N.D.Ohio 1986); *In re Spadel*, 28 B.R. 537 (Bankr.E.D.Penn. 1983); *In re Mahaner, supra; In re Cordes, supra; In re Maitland, supra*.

This court believes that the majority view is the better reasoned approach for the reasons stated below.

The plaintiffs base their complaint on the combined effect of §§ 506(a) and (d). These two sections provide as follows:

§ 506(a):

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a

secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

§ 506(d):

To the extent that a lien secures a claim against the debtor that is *not an allowed secured claim,* such lien is void unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of an entity to file a proof of such claim under section 501 of this title. (Emphasis added)

Under § 506(a) an undersecured creditor's allowed claim is bifurcated. The amount of the claim, up to the value of the creditor's interest in the collateral is an allowed secured claim, the amount of the claim above that amount is an allowed unsecured claim.

Under § 506(d), any lien that secures a claim against the debtor that is not an "allowed secured claim" is, subject to certain exceptions, (that are not applicable in this case) void. This would include the undersecured portion of a secured creditor's claim, as it is not, by operation of § 506(a), part of the "allowed secured claim". Thus, a plain reading of the statutes supports the debtors' complaint.

In *In re Tanner, supra,* the court held that the debtor could use § 506 to void a third mortgage on the debtor's residence where the market value of the property was totally consumed by the first two mortgages. There, the court stated that neither § 506(d)'s language nor its legislative history limit the scope of the term "lien" to exclude real estate mortgages. In fact, § 101(28) (presently § 101(33))[1] gives an extremely broad definition to the term "lien". Such an analysis is consistent with the overall scheme of § 506.

This also comports with the Code's overall "fresh start" policy. The *Tanner* court reasoned:

The assets of the Debtor are determined at time of filing. Apart from allowable exemptions, the remainder of the Debtor's assets are distributed to his creditors. The Debtor receives a discharge and a new beginning. Property acquired afterward is not subject to claims of pre-petition creditors. Appreciation of property or an increase in equity ownership by the reduction of an outstanding mortgage are examples of after acquired property which are attributable to the debtor's post-bankruptcy efforts. If a real property mortgage is not avoidable to the extent it is undersecured, a pre-petition creditor will impair the Debtor's fresh start by partaking in his post-petition property acquisitions.

The Code scheme of § 506 is that creditors receive through the valuation procedure of the bankruptcy court the same property value that they would receive through a non-bankruptcy forced sale of the debtor's non-exempt assets as of the petition date. Assuming the sale price is the market value, the defendant would receive nothing under a forced sale. The property would pass to the purchaser free of defendant's lien. The operation of § 506(d) merely effectuates the marketplace. 14 Bankr. at 936, 937.

Based on the holdings in *In re Mahaner, supra,* and other cases following the minority view, defendant makes three arguments in support of its motion to dismiss.

---

**1.** § 101(33) "'lien' means charge against or interest in property to secure payment of a debt or performance of an obligation;"

■ First, defendant argues that to allow the plaintiffs to void the lien on the undersecured portion of its mortgage would ostensibly permit them to "redeem" the property for its fair market value. Section 722 allows redemption of personal property, not real property. Allowing lien avoidance of real property in Chapter 7 under § 506(d) would render § 722 surplusage.

Section 722 provides:

An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

When faced with two potentially conflicting sections of the Code, this court must attempt to give effect to both. The court in *Gibbs supra* rejected the argument made by defendant stating:

While § 722 is arguably incorporated within § 506(d), it has a completely different thrust. It is obviously a Chapter 7 provision and therefore applies only to Chapter 7 cases and also only to individual debtors on certain types of personal property secured by certain type of debt. The two provisions are certainly not inconsistent and I don't feel that the arguable redundancy argues in favor of restricting a section which is unambiguous on its face. 44 Bankr. at 478.

In addition, § 722, if applicable, allows a debtor to redeem collateral by paying the holder of any lien the amount of the allowed secured claim of such holder, regardless of the contractual rights and obligations between the parties. Normally, redemption under § 722 must be accomplished by a lump sum cash payment. *In re Nelson*, slip op. 382–00335, (Bankr.D.Or. May 21, 1982) (Sullivan, J.)

Here, allowing the plaintiffs to void the defendant's mortgage on their residence to the extent that the claim secured by the mortgage is undersecured does not necessarily work a redemption. "... in a chapter 7 liquidation proceeding the Court has no authority to rewrite the terms and conditions of the security agreement." *In re Lindsey*, 64 Bankr. 19, 25. Whether or not the plaintiffs could "redeem" their residence from defendant's mortgage by payment, to defendant, in the sum of $29,000, might well depend upon the provisions of the note and mortgage existing between plaintiffs and defendant (for example, there could be pre-payment penalties and other contractual obligations that would remain unaltered by fixing defendant's allowed secured claim under § 506).

Indeed, there is no authority for the relief sought by plaintiffs, in their complaint, to have this court declare the undersecured portion of defendant's claim to be considered "paid and satisfied".

■ Defendant further argues that to allow lien avoidance will frustrate the Congressional policy of encouraging reorganization, by allowing a debtor to receive in Chapter 7, more than could be obtained in Chapter 13 or Chapter 11. Defendant cites § 1322(b)(2) which prohibits a Chapter 13 debtor from modifying the terms of a mortgage on his principal residence and § 1111(b)(2) which allows a secured creditor, in Chapter 11, to elect to retain its lien for its full amount.

This argument looks at lien avoidance as if it existed in a vacuum. Lien avoidance is only one of a myriad of factors a debtor may consider when choosing between bankruptcy chapters. Each chapter contains its own special inducements and restrictions and must be evaluated as a whole. "If § 506(d) is one of those provisions that makes Chapter 7 attractive for individual debtors, that is a decision that Congress has made and it is something for Congress to change if it sees fit." *In re Gibbs*, 44 Bankr, 475, 479.

■ Finally, defendant argues that to permit lien avoidance would effect an unconstitutional taking of its right to future appreciation of the collateral.

Avoiding the undersecured portion of a mortgage lien merely deprives the creditor of an empty legal right. Section 506 merely effectuates the market price by allowing, within bankruptcy, that which would occur outside it in a foreclosure sale. A totally undersecured creditor would receive nothing in a foreclosure sale.

Here, in a foreclosure sale, defendant would receive the sum of $29,000. The balance of its lien lacks any present property value. Any anticipated appreciation or increase in equity would also be extinguished in a foreclosure sale.

 This court agrees with the analysis of the *Tanner* court that appreciation of property or an increase in equity post-petition is property acquired after bankruptcy which is not subject to claims of pre-petition creditors.

Although not cited by defendant, there is another line of cases which prohibit lien avoidance. These cases hold that § 506(d) cannot be used unless there has been a prior determination under *§ 502(a) not § 506(a)*, that the underlying claim has been disallowed. *Wolf supra.; Spadel supra*, see also, *Simmons v. Savell*, 765 F.2d 547, 558 (5th Cir.1985). These courts base their reasoning on the original legislative history of § 506(d) which states:

> Subsection (d) permits liens to pass through the bankruptcy case unaffected. However, if a party in interest requests the court to determine and allow or disallow the claim secured by the lien under section 502 and the claim is not allowed, then the lien is void to the extent that the claim is not allowed. *See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 357 (1977); U.S.Code Cong. & Admin.News 1978, pp. 5787, 6313. *See also Collier on Bankruptcy* ¶ 506.07 at 506–61 (15th Ed.1985).

In other words, should the claim underlying a lien be disallowed under § 502, the lien must also fall as a lien cannot stand without an underlying claim to support it. While this proposition is clearly true, as a matter of common law and general equity, such an interpretation renders § 506(d) mere surplusage. Further, this interpretation completely divorces § 506(d) from § 506(a). Clearly, Congress intended that the two sections be read and applied together.

Simply put, under § 506(d), liens pass through bankruptcy unaffected unless challenged in some way. Challenges may come by objecting to allowance of the underlying claim through § 502 or by a valuation hearing and bifurcation through § 506(a) and § 506(d).

### CONCLUSION

A plain reading of § 506(a) and § 506(d) allows the plaintiffs to avoid the undersecured portion of defendant's mortgage as sought by plaintiffs' complaint. This court declines to follow the reasoning of the courts which have denied lien avoidance and adopts the reasoning of those courts that allow lien avoidance. Accordingly, this court finds that plaintiffs' complaint does state a claim upon which relief can be granted and that defendant's motion should be denied.

An order consistent herewith shall be entered.