**In re Gary Raymond DONAHUE, Debtor.**

**Gary Raymond DONAHUE, Plaintiff,**

v.

**Linda K. PARKER (f/k/a Linda K. Donahue), Defendant.**

Bankruptcy No. 84–20997–7.
Adv. No. 89–0019.

United States Bankruptcy Court,
D. Kansas.

Jan. 18, 1990.

**42**

Joseph N. Vader, Olathe, Kan., for plaintiff/debtor.

F. Stannard Lentz, Carl R. Clark, of Lentz & Clark, Overland Park, Kan., for defendant.

David C. Seitter, Overland Park, Kan., Trustee.

## MEMORANDUM OPINION AND ORDER

BENJAMIN E. FRANKLIN, Chief Judge.

This matter comes on for hearing before the Court on August 16, 1989, pursuant to debtor/plaintiff Gary R. Donahue's Verified Complaint for Order Enjoining State Court Enforcement of Alleged Lien and Order to Determine Extent of Alleged Lien. The debtor/plaintiff appeared in person and through his attorney, John T. Flannagan. The defendant, Linda K. Parker, appeared in person and through her attorney, F. Stannard Lentz. Subsequent to trial, on October 11, 1989, John T. Flannagan filed his Motion for leave to withdraw as attorney of record for the debtor/plaintiff, which motion was sustained by the Court on October 12, 1989.

### FINDINGS OF FACT

Based upon the pleadings and the record, this court finds as follows:

1. That on August 11, 1982, debtor/plaintiff, Gary R. Donahue (hereinafter "plaintiff") and defendant, Linda K. (Donahue) Parker (hereinafter "defendant") were granted a divorce in the District Court of Johnson County, Kansas.

2. That pursuant to the Decree of Divorce the plaintiff Gary Donahue was awarded:

   A. Real Property legally described as follows, subject to any indebtedness thereon and to the judgment to (Linda K. Parker) in the amount of $43,650:

   The Southwest ¼ of Section 27, Township 17, Range 25, Miami County, Kansas.

3. That on November 7, 1984, plaintiff filed his voluntary Chapter 7 bankruptcy petition.

4. That on January 14, 1985, defendant filed her proof of claim asserting her status as a secured creditor in the amount of $43,650.00 by virtue of said divorce decree.

5. That on May 1, 1985, plaintiff was granted a discharge.

6. That this case was originally before this Court in 1985 and this Court, in its Journal Entry dated October 23, 1985, found that defendant Linda K. Parker had failed to perfect her lien in the real property located in Miami County. Thus, when the bankruptcy petition was filed, defen-

dant's claim was unsecured and therefore discharged in the bankruptcy proceeding.

7. That the decision of this Court was affirmed by Judge Saffels, for the U.S. District Court of Kansas. *In re Donahue*, 62 B.R. 607 (D.Kan.1986).

8. That the 10th Circuit Court of Appeals reversed the decisions of this Court and the U.S. District Court and found that the divorce decree created an "equitable lien" upon the real property on behalf of defendant, Linda K. Parker. *In re Donahue*, 862 F.2d 259 (10th Cir.1988).

9. That on January 9, 1989, after remand of the case to this Court, plaintiff filed his Motion For Lien Avoidance pursuant to § 522(f) with this Court.

10. That on April 25, 1989, after a hearing on this motion was held on March 28, 1989, this Court found that plaintiff's Motion for Lien Avoidance should be denied.

11. That on February 23, 1989, while the motion for lien avoidance was pending, plaintiff filed his Verified Complaint for Order Enjoining State Court Enforcement of Alleged Lien and Order to Determine Extent of Alleged Lien.

12. That on August 16, 1989, there was before this Court a hearing on plaintiff's verified complaint.

13. That after hearing the testimony and the arguments of counsel, this Court took the matter under advisement.

## CONCLUSIONS OF LAW

This Court recognizes that a bankruptcy court "may affect the interests of lien holders in many ways" during a bankruptcy proceeding. *In re Tanner*, 14 B.R. 933, 938 (Bankr.W.D.Pa.1981) (quoting, *Wright v. Vinton Branch of Mountain Trust Bank*, 300 U.S. 440, 470, 57 S.Ct. 556, 565, 81 L.Ed. 736 (1937)). Moreover, Congress contemplated the effects a bankruptcy would have on various lien holders when it enacted the Bankruptcy Code. Under § 506 of the Bankruptcy Code, a debtor is able to determine the secured status of a creditor (lien holder). Section 506 states in pertinent part as follows:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim....

Moreover, under § 506(d) a creditor's interest in their lien can be further defined in bankruptcy to the extent that they are either an oversecured lien creditor or an undersecured lien creditor:

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

This Court is well aware of the difference of opinions that exist in the various circuits when considering the application of § 506 in Chapter 7 cases. A majority of courts follow the view that a Chapter 7 debtor is allowed to use § 506 of the Code to determine the secured status of a creditor and to avoid the *unsecured* portion of his undersecured claim. The first case on this issue is *In re Tanner*, 14 B.R. 933 (Bankr.W.D.Pa.1981). The *Tanner* Court held that a Chapter 7 debtor could avoid mortgage liens under § 506 of the Bankruptcy Code. The *Tanner* court further stated that permitting a Chapter 7 debtor to use § 506 followed the "fresh start" policies expounded by the Code. Moreover, the court found that "[a]ppreciation of property or an increase of equity ownership" in the property are forms of after acquired property that the court considered to be free from the claims of prepetition creditors. *Tanner*, at 936.

Many courts have followed the *Tanner* court view. *In re Gibbs*, 44 B.R. 475 (Bankr.D.Minn.1984) ("As a Chapter 5 provision, § 506 applies in cases under all

chapters of the Bankruptcy Code.... Since it does apply in Chapter 7 cases, its use would almost always be by debtors on exempt property or on property that had been abandoned by the trustee." *Id.* at 478); *In re Worrell*, 67 B.R. 16 (C.D.Ill. 1986) (The court held "in light of the statutory language used in the Bankruptcy Code, ... § 506(d) does allow a Chapter 7 bankruptcy debtor to avoid that portion of a real estate mortgage lien which is not secured by the fair market value of the real estate." *Id.* at 19); *In re O'Leary*, 75 B.R. 881 (Bankr.D.Or.1987) ("A plain reading of § 506(a) and § 506(d) allows the plaintiffs to avoid the undersecured portion" of the creditor's claim in a Chapter 7 bankruptcy. *Id.* at 885); *In re Crouch*, 76 B.R. 91 (Bankr.W.D.Va.1987) ("this Court does not find the reasoning used in *Mahaner* [the minority view] decision persuasive in view of the plain meaning of § 506(d)." *Id.* at 94); *In re Mays*, 85 B.R. 955 (Bankr. E.D.Pa.1988) (A chapter 7 debtor may use § 506. *Id.*); *In re Garnett*, 88 B.R. 123 (Bankr.W.D.Ky.1988), *aff'd*, 99 B.R. 757 (W.D.Ky.1989) (Chapter 7 debtors can use § 506 to avoid the unsecured portion of a mortgage lien. *Id.*); *Matter of Folendore*, 862 F.2d 1537 (11th Cir.1989) ("The majority view of the bankruptcy courts is that § 506(d) may be used to void a lien" *Id.* at 1539).

Several circuits have followed the *minority view* that a Chapter 7 debtor cannot use the benefits of section 506. *In re Mahaner*, 34 B.R. 308 (Bankr.W.D.N.Y.1983) ("§ 506 may not be used to avoid a mortgage lien in a Chapter 7 case." *Id.*, at 309); *In re Maitland*, 61 B.R. 130 (Bankr.E.D. Va.1986) (§ 506 may not be used by Chapter 7 debtors to determine the status of secured creditor's claim nor may it be used to avoid liens against abandoned real property. *Id.*); *In re Smith*, 79 B.R. 650 (Bankr.D.Md.1987) (Chapter 7 debtor not allowed to use § 506 to determine the secured status of creditor nor to avoid or reduce the second mortgage lien held by the creditor. *Id.*); *Matter of Hoyt*, 93 B.R. 540 (Bankr.S.D.Iowa 1988) (Chapter 7 debtors not permitted to use § 506 to avoid a mortgage lien which exceeded the value of the mortgaged property. *Id.*).

■ This Court agrees with the *majority opinion* that a Chapter 7 debtor is allowed to use § 506 to determine the secured status of the creditor and to determine how much of the lien can be avoided as being undersecured. In the case at bar then, the debtor is allowed to use § 506(a) to determine the status of Parker's claim against his homestead.

Thus, since Parker's claim has been established as being secured, based upon the findings of the 10th Circuit (862 F.2d 259) that her claim was an "equitable lien," this Court must now look to the value of that claim to determine if the debtor is allowed to avoid any portion thereof, since said claim is undersecured on the homestead. This Court also has found that § 506 authorizes it to void any unsecured portion of a lien. *In re Lindsey*, 64 B.R. 19, 24 (Bankr. C.D.Ill.1986); *In re Tanner*, 14 B.R. 933 (Bankr.W.D.Pa.1981) ("the only reasonable conclusion is that Congress intended section 506(d) to authorize the avoidance of a real property mortgage to the extent it exceeds the value of the collateral." *Id.* at 937).

■ In order for this Court to place a value on the property, it must look to see when the valuation of the property should occur in a Chapter 7 proceeding. Bankruptcy Courts have been given discretion to "determine value on a case by case basis." *In re Jones*, 5 B.R. 736, 738 (Bankr.E.D.Va. 1980). This Court finds that the value of the property is to be determined at the time of the filing of the bankruptcy petition under Chapter 7. *In re Tanner*, 14 B.R. 933, 936 (Bankr.W.D.Pa.1981) ("The assets of the Debtor are determined at time of filing." *Id.* at 936); *In re Tarrant*, 19 B.R. 360, 366 (Bankr.D.Alaska 1982) ("even a direct application of § 506(a) would not alter the conclusion that exempt property is to be valued as of the date of the filing of the Chapter 7 petition.... Congress intended that valuation be made as of the date of filing of the petition." *Id.* at 366); *In re Lindsey*, 64 B.R. 19, 24 (Bankr.C.D. Ill.1986) ("property should be valued as of

the date of the commencement of the proceedings." *Id.* at 24); *In re O'Leary,* 75 B.R. 881, 883 (Bankr.D.Or.1987) ("The assets of the Debtor are determined at time of filing." *Id.* at 883) (*quoting, In re Tanner,* 14 B.R. 933, 936 (Bankr.W.D.Pa.1981); *In re Mays,* 85 B.R. 955, 958 (Bankr.E.D. Pa.1988) ("Since there is no plan in a Chapter 7 case, it is apparent that the evaluative moment in such a case must be, for all purposes, the date of filing." *Id.* at 958); *Cf. In re Bremer,* 104 B.R. 999, 1008 (Bankr.W.D.Mo.1989) ("The procedure for codal valuations should be formulated on a case-by-case basis, based on the facts of the case, and should be made in light of general equitable principles." *Id.* at 1008). *See* Comment, *Bankruptcy Code Section 506(a) and Undersecured Creditors: What Date for Valuation?* 34 U.C.L.A. L.Rev. 1953 (1987) ("in most cases the balance of the equities will favor the use of the petition date when the collateral appreciates." *Id.* at 1979).

Thus, this Court finds in the case at bar, that the value of the property at the time of filing the bankruptcy petition was $80,000 less the amount of principal still owed on the property at the time of the bankruptcy filing of $44,000. This gave the debtor an interest of $36,000 in the property. Parker's judgment claim against the debtor, with interest which accrued up to the filing of the bankruptcy petition on November 7, 1984 would be $47,948.13. Based upon the following calculations Parker would have a secured claim against the homestead for $36,000 and an unsecured claim of $11,948.13:

| | |
|---|---|
| Value of Property at time of filing: | $80,000.00 |
| Less amount still owed on property: | 44,000.00 |
| Total available: | $36,000.00 |
| Amount of Parker claim with interest up to November 7, 1984: | $47,948.13 |
| Less amount available on property: | 36,000.00 |
| Total amount of unsecured lien: | $11,948.13 |

Based upon the foregoing, the debtor is allowed to discharge $11,948.13 of unsecured debt held by Parker under § 506 of the Bankruptcy Code. To hold otherwise would be unfair to the debtor in this situation. In the case at bar, the debtor and his then wife Parker, purchased the home for $132,000 in 1979. Based upon the testimony of the debtor at the trial, Parker only remained in the home for 30 days then she left. When the debtor filed bankruptcy in November, 1984 the value of the property was only $80,000—this was a result of the depressed price of farm real estate in Miami County during the early 1980's. Subsequent to the filing of bankruptcy, the debtor paid the remaining balance due on the homestead ($44,000). This Court is ever mindful that it sits as a Court of Equity. *In re Sasaki,* 71 B.R. 492, 499 (Bankr.D. Haw.1987); *In re Madeline Marie Nursing Homes,* 694 F.2d 433, 436 (6th Cir.1982). To allow Parker to have an interest on the post-petition $44,000 equity established by the debtor would be unjust in this case.

■ Moreover, this Court finds, as the Honorable Ellis W. Kerr found, that "[a]ppreciation of property or an increase in equity ownership by the reduction of an outstanding mortgage are examples of after acquired property which are attributable [solely] to the Debtor's post-bankruptcy efforts," and as such are his alone. *Brace v. State Farm Mut. Ins.,* 33 B.R. 91, 93 (Bankr.S.D.Ohio W.D.1983). In the case at bar, Parker is not prejudiced by this Court's decision as "voiding a mortgage to the extent it is undersecured is not an actual deprivation of property [for the lien holder]. The lien holder is deprived of an empty legal right rather than a valuable property right." *In re Tanner,* 14 B.R. 933, 938 (Bankr.W.D.Pa.1981). Furthermore, "[t]he fact that the [lien holder] may have some sort of expectancy interest based upon anticipated appreciation or increase in equity does not require a different conclusion." *Id.* at 938.

This Court is also aware that if the lien would not be avoidable to the extent that it is undersecured, Parker would be impairing the debtor's "fresh start," given to him in bankruptcy, by partaking in his post-petition equity increase. *In re Lindsey,* 64 B.R. 19, 24 (Bankr.C.D.Ill.1986); *Brace v. State Farm Mut. Ins.,* 33 B.R. 91, 93 (Bankr.S.D.Ohio 1983).

Finally, creditor's counsel has asked this Court to look beyond the normal findings

that an undersecured creditor is not allowed interest to accrue on their claim during a bankruptcy proceeding. The United States Supreme Court has addressed the question of whether an undersecured creditor should be allowed postpetition interest on his claim in *United Savings Ass'n. v. Timbers of Inwood Forest*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (hereinafter *"Timbers"*). Justice Scalia found, writing the opinion for the unanimous Court, that the effect of § 506 is to deny "undersecured creditors postpetition interest on their claims." *Id.* at 372, 108 S.Ct. at 630. Justice Scalia further found that "[s]ince this provision permits postpetition interest to be paid only out of the 'security cushion,' the undersecured creditor who has no such cushion, falls within the general rule disallowing postpetition interest." *Id.* at 372–373, 108 S.Ct. at 630–631. *In re Philadelphia Consumer Discount Co.*, 37 B.R. 946 (D.C.E.D.Pa.1984) ("undersecured creditors are not entitled to protection of the 'opportunity cost' or the 'use value' of their collateral ..." *Id.* at 950). Therefore, this Court finds that it will not grant interest to an undersecured creditor in the case at bar.

IT IS, THEREFORE, BY THE COURT, ORDERED That the Chapter 7 debtor, Gary Raymond Donahue, may invoke § 506 of the Bankruptcy Code to determine the status of Parker's claim on his homestead. Having invoked this section of the Code this Court finds that the claim of Linda K. Parker is undersecured as against the debtor's homestead.

IT IS, FURTHER, BY THE COURT, ORDERED, That since this Court has determined that Linda K. Parker has an undersecured claim, the secured portion of her claim against the debtor is $36,000; and the unsecured portion of her claim is $11,948.13. This unsecured portion is therefore discharged.

IT IS, FURTHER, BY THE COURT, ORDERED, That since Linda K. Parker is an undersecured creditor of the debtor, Gary Raymond Donahue, she is entitled to no interest on her claim from the date of the filing of the Chapter 7 bankruptcy petition.

This Memorandum shall constitute my Findings of Fact and Conclusions of Law under Bankruptcy Rule 7052 and Rule 52(a) of the Federal Rules of Civil Procedure.