In re Evelyn TANNER, a/k/a Evelyn J. Tanner, Debtor.

Evelyn TANNER, Plaintiff,

v.

FINANCEAMERICA CONSUMER DISCOUNT COMPANY, Defendant.

Bankruptcy No. 80–1832.
Adv. No. 81–340.

United States Bankruptcy Court,
W. D. Pennsylvania.

Oct. 30, 1981.

J. Lauson Cashdollar, Beaver, Pa., for the debtor/plaintiff.

Joseph J. Bernstein, Apple & Bernstein, Pittsburgh, Pa., for the defendant.

## MEMORANDUM OPINION

JOSEPH L. COSETTI

### FACTS

Evelyn Tanner filed a Voluntary Petition for relief under Chapter 7, Title 11, of the United States Code on November 10, 1980. The Debtor alleged the market value of her home was $20,000. The property is encum-

bered with three mortgages, the first two totaling $23,980 and therefore exhausting the alleged market value of the home. Defendant, FinanceAmerica Consumer Discount Company, owns the third mortgage which it acquired April 9, 1980. The Debtor filed a Complaint on March 13, 1981, requesting the Court to declare the third mortgage unsecured and void pursuant to Section 506 of the Bankruptcy Code. A hearing was held on April 28, 1981. The Court after hearing evidence found the value of the house to be $20,000, the same as admitted by the Defendant in his Answer to the Complaint. The Defendant averred in its Answer that no provision under the Bankruptcy Code allows the Debtor to avoid the lien of the Defendant's mortgage.

## ISSUE

The issue before the Court is whether Section 506(d) of the Bankruptcy Code allows for the avoidance of a real property mortgage acquired after the effective date of the Code to the extent the mortgage exceeds the value of the collateral? Section 506(d) reads:

> To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—
> (1) a party in interest has not requested that the court determine and allow or disallow such claim under section 502 of this title; or
> (2) such claim was disallowed only under section 502(e) of this title.

The Debtor relies on the plain language of subsection (d) as sufficient support for the right to avoid a mortgage. The Defendant argues that Congress did not intend real property mortgages to be voidable and that "lien" as used in Section 506(d) does not refer to a lien of a mortgage on real property. The crux of the Defendant's argument is that a real property mortgage is a security interest with the highest dignity and that Congress would have specifically stated that real property mortgages were voidable if it so intended. It is necessary to apply basic principles of statutory construction and to review pertinent case law to determine the proper application of Section 506(d).

## STATUTORY CONSTRUCTION

The initial focal point for determining the intended meaning of Section 506(d) is its plain language. Congress used the word "lien" without qualification which indicates an intention the definition provided in Section 101(28) is applicable. Lien is defined as follows:

> [a] charge against or interest in property to secure payment of a debt or performance of an obligation.

It is unlikely that Congress would define a lien broadly and then use the word in a narrower sense without so indicating. Further indications of Congressional intent that a real property mortgage is included within the meaning of lien in Section 506(d) are apparent from language elsewhere in the Code. Congress defined judicial lien in Section 101(27), security interest in Section 101(37) and statutory lien in Section 101(38). These are specific types of liens within the general definition of lien. These terms are used throughout the Code indicating Congress knew how to designate subspecies of lien when it so desired. In addition, Congress has demonstrated that when it desired to single out a real property mortgage for special treatment, it will clearly so indicate. An example is Section 1322(b)(2):

> [the plan may] modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . .

A reading of subsection 506(d) in context with Section 506 as a whole supports the conclusion that "lien" includes the lien of a real property mortgage. Section 506 is composed of four subsections. Subsection (a) deals with the determination of whether an allowed claim of a creditor secured by a lien on property is an allowed secured claim. Subsection (b) provides for a holder of an allowed secured claim to recover reasonable fees, costs or charges provided under the mortgage agreement to the extent the allowed secured claim exceeds the value of the property and after the Trustee has re-

covered certain costs specified in subsection (c).

■ We conclude that subsections (a), (b) and (c) do pertain to real property mortgages. We consider this position as consistent with the entire scheme for determining a valid secured creditor under the Code. To do otherwise would lead to the conclusion that a real property mortgage is a "claim" under Section 101(4) which must be filed under Section 501 and "allowed" under Section 502, but not within the meaning of "an allowed secured claim" in Sections 506(a)(b)(c).

Subsections (a), (b) and (c) determine the extent a "lien on property", including a real property mortgage, gives rise to an allowed secured claim. Subsection (d) deals with a "lien on property" to the extent it does not effect an allowed secured claim. An interpretation which prevents the avoidance of a real property mortgage by excepting it from the meaning of a "lien on property" as used in (a), (b) and (c) is unjustified if subsection (d) is read in context with the prior subsections and the entire scheme for determining secured claims. The construction urged by the Defendant not only requires reading out a real property mortgage from subsection (d) but, to be consistent, also from subsection (a). The result is an anomaly in that an allowed claim of a creditor secured by a real property mortgage is *not* subject to a determination of secured status under Section 506 as are all other creditors. If subsection (d) is construed in light of the definitional section, Section 506 in its entirety, and the overall scheme of the Code, the reasonable conclusion is Congress intended a real property mortgage to be avoidable to the extent it exceeds the value of the collateral.

Legislative history on subsection (d) is sparse. A comparable section to (d) did not exist under the Bankruptcy Act. The legislative history, however, reveals the following:

Subsection (d) permits liens to pass through the bankruptcy case unaffected. However, if a party in interest requests the court to determine and allow or disal-

low the claim secured by the lien under section 502 and the claim is not allowed, then the lien is void to the extent that the claim is not allowed. H.R.Rep.No. 595, 95th Cong., 1st Sess. 357, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6313 (1977).

The word "lien" is used three times without qualification in successive sentences in describing the operation of Section 506(d). Absent a clear indication to the contrary, it is reasonable to presume its meaning is the same throughout the description. The Defendant does not argue that "lien" in the first sentence does not refer to real property mortgages since such an interpretation would defeat his position. A fair reading of the House Report requires a consistent interpretation of "lien" in the second sentence. Legislative history, as well as the language of Section 506(d) supports the construction that a real property mortgage is avoidable under subsection (d).

The final step in statutory construction is to determine whether a particular interpretation is consistent with the overall purpose of the statute. In particular, is the avoidance of a real property mortgage to the extent it exceeds the value of the collateral consistent with the Code's policy of a "fresh start" for an "honest but unfortunate debtor?"

The assets of the Debtor are determined at time of filing. Apart from allowable exemptions, the remainder of the Debtor's assets are distributed to his creditors. The Debtor receives a discharge and a new beginning. Property acquired afterward is not subject to claims of pre-petition creditors. Appreciation of property or an increase of equity ownership by the reduction of an outstanding mortgage are examples of after acquired property which are attributable to the Debtor's post-bankruptcy efforts. If a real property mortgage is not avoidable to the extent it is undersecured, a pre-petition creditor will impair the Debtor's fresh start by partaking in his post-petition property acquisitions.

The Code scheme of Section 506 is that creditors receive through the valuation pro-

cedure of the Bankruptcy Court the same property value that they would receive through a non-bankruptcy forced sale of the Debtor's non-exempt assets as of the petition date. Assuming the sale price is the market value, the Defendant would receive nothing under a forced sale. The property would pass to the purchaser free of Defendant's lien. The operation of Section 506(d) merely effectuates the market place.

At a forced sale the Debtor does not retain title to the property and the overvalued lien holder would not gain from future appreciation or increases in the equity. The Defendant's argument requires attributing to Congress an intent to benefit the real property mortgage holder more under a bankruptcy proceeding than under a non-bankruptcy forced sale. Clearly that is not consistent with the intent of Congress in providing for Debtor "relief" under the Bankruptcy Code.

■ The operation of subsection (d) to avoid undersecured real property mortgages is consistent with the Code's policy of providing the Debtor a fresh start. On the basis of the plain meaning of the language of Section 506 and elsewhere in the Code, the legislative history of subsection (d), and the fresh start policy of the Code, the only reasonable conclusion is that Congress intended Section 506(d) to authorize the avoidance of a real property mortgage to the extent it exceeds the value of the collateral.

## CASE LAW INTERPRETATION

Only one reported case applied Section 506(d). *Walker v. First Federal Savings and Loan,* 11 B.R. 43 (Bkrtcy.E.D.N.D.Ill. 1981). In *Walker* the Defendant was a second mortgagee holding a mortgage worth $12,900. The first mortgage was worth $22,700 and the property was valued at $23,800. The court applied Section 506(d) and voided the second mortgage to the extent of $11,800. The *Walker* court evidently concluded the meaning of (d) was clear on its face and applied it without explanation to a real property mortgage.

The only explanation of Section 506(d) appears in dicta in *Pitre v. First Federal Savings and Loan Association of Chicago,* 11 B.R. 777 (Bkrtcy.E.D.N.D.Ill.1981). The Court was required to interpret Section 522(f) and decide whether a judicial lien which impairs an exemption is void to the extent of the impairment or merely subordinated to the exemption. The Court reasoned that the later interpretation is inconsistent with Section 506(d) since it thereafter could be avoided by a petition under Section 506(d). The purpose of Section 506(d) was explained as follows:

> Section 506 looks to the value of the property at the time of bankruptcy and sets the creditor's secured claim and thereby the amount of its lien for all time. Its effect is to prevent the creditor with a security interest in property with a value at the time of bankruptcy which is less than the amount of his claim from realizing future benefits as a secured creditor as a result of the property subsequently appreciating or as the result of the debtor making payments on claims with priority secured by the same property. *Id.,* at 781.

Even though *Pitre* is concerned with a judicial lien, the purpose of Section 506(d) as explained applies equally well to all types of liens.

Two other cases indicate in dicta that Section 506(d) allows the avoidance of real property mortgages. In *Geiger v. Geiger,* 12 B.R. 410 (Bkrtcy.E.D.Wis.1981), the Court had to determine whether a real property mortgage passed through bankruptcy unaffected. The Court reasoned that since a party in interest had not requested the Court to determine and allow or disallow the claim under Section 502, as required by Section 506(d)(1), the mortgage remained intact after discharge. The inference is clear that the Court interpreted Section 506(d) to allow the avoiding of a real property mortgage if a party in interest has requested a determination of the claim under Section 502.

In *In re Hotel Associates, Inc., et al,* 3 B.R. 341, 1 CBC 819 (Bkrtcy.E.D.Pa.1980),

the Debtors filed a Complaint for determination of secured status pursuant to Section 506 alleging that Defendant's real property mortgage exceeded the value of the collateral. The Complaint was dismissed because proof of the Defendant's claim had not been filed under Section 501 thus preventing a determination of its "allowability" under Section 502. Since Section 506(a) addresses the determination of whether an "allowed" claim is secured or unsecured, the fact that the Defendant's claim had not been filed prevented the Court from determining if it was "allowed" and consequently whether it was secured or unsecured. The Court in dicta explained that Section 506(d) allows liens to pass through the bankruptcy case unaffected unless a party in interest requests the Court to determine and allow or disallow the claim secured by the lien under Section 502 and the claim is not allowed, then the lien is void to the extent that the claim is not allowed. *Id.*, 3 B.R. at 342. Since the Defendant's claim was a real property mortgage, the Court's discussion of lien avoidance under Section 506(d) implies that a real property mortgage is a class of lien subject to avoidance.

Case law interpretation has been sparse. Courts which have applied or discussed Section 506(d) have failed to give any indications that a real property mortgage is to be treated as a form of "super lien" exempt from avoidance.

CONSTITUTIONALITY

The Defendant does not raise constitutional objections in its Answer. However, brief discussion is addressed to the concerns that Section 506(d) effectuates an unconstitutional abridgement of a lien holder's right to due process under the Fifth Amendment to the United States Constitution.

■ The bankruptcy power has been broadly construed. Its scope has been defined as follows:

[The bankruptcy power] extends to all cases where the law causes to be distributed the property of the debtor among his creditors; this is its least limit. Its greatest is a discharge of a debtor from his contracts. And all intermediate legislation, affecting substance and form, but tending to further the great end of the subject—distribution and discharge—are in the competency and discretion of Congress. *In re Klein*, 14 Fed.Cas. No. 7, 865 p. 716, 718 (Catron, Circuit Justice, C.C.D. Mo.1843).

The power is not absolute. Congress may not modify secured creditor's rights "to such an extent as to deny the due process of law guaranteed by the Fifth Amendment." *Wright v. Vinton Branch of Mountain Trust Bank*, 300 U.S. 440, 470, 57 S.Ct. 556, 565, 81 L.Ed. 736 (1937). A modification of a mortgagee's rights must be "reasonable." *Id.* "A court of bankruptcy may affect the interests of lien holders in many ways." *Id.*

■ Clearly the Defendant's right to procedural due process was not impaired since it received notice and had an opportunity for a hearing at which it in fact did appear. The only remaining basis for an objection is that Section 506(d) permits a deprivation of property which violates the right to substantive due process. First, voiding a mortgage to the extent it is undersecured is not an actual deprivation of property. The lien holder is deprived of an empty legal right rather than a valuable property right. If a totally undersecured mortgagee brought an action to foreclose, he would not receive anything but the extinguishment of his lien. All that Section 506(d) does is allow in bankruptcy what would occur outside bankruptcy in a foreclosure sale—the extinguishment of a lien lacking any present property value. The fact that a mortgagee may have some sort of expectancy interest based upon anticipated appreciation or increase in equity does not require a different conclusion, since it also would be extinguished in a foreclosure proceeding.

■ Secondly, the Defendant in this case acquired its mortgage after the effective date of the Code; therefore, the inquiry is whether bankruptcy legislation may prospectively impair freedom of contract. It has long since been settled by the Supreme Court that the due process clause is not a significant restraint on the government's

right to act prospectively in matters of economic or social welfare. *West Coast Hotel v. Parrish*, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937); *United States v. Carolene Products Company*, 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938); *Lincoln Federal Labor Union v. Northwestern Iron & Metal Company*, 335 U.S. 525, 69 S.Ct. 251, 93 L.Ed. 212 (1949); *Williamson v. Lee Optical Company*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); and *Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963).

The Supreme Court has made it clear that "existing laws are read into contracts."

The mortgage contract was made subject to constitutional power in the Congress to legislate on the subject of bankruptcies. Impliedly, this was written into the contract ... 'Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order.' [20] *Wright v. Union Central Life Insurance Company*, 304 U.S. 502, 516, 58 S.Ct. 1025, 1033, 82 L.Ed. 1490 (1937).

▮ Congress announced in Section 506(d) to the financing industry that henceforth a lien would not be protected to the extent it exceeds the value of the collateral. Lenders had sufficient notice to alter their lending practices accordingly, i. e., cease making undersecured loans or increase their lending rate to cover losses anticipated from debtor bankruptcies. "The guaranty of due process ... demands only that the law shall not be unreasonable, arbitrary or capricious, and that the means selected shall have a real and substantial relation to the object sought to be obtained." *Nebbia v. New York*, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934). Lien avoidance is not unreasonable in light of the scope of the bankruptcy power and the forewarning provided the lending industry. It is neither arbitrary nor capricious as it applies to all undersecured lien holders. Clearly it has a real and substantial relation to the object of providing debtor relief. Section 506(d) affords lien holders adequate substantive due process. If the Defendant had acquired his lien prior to the effective date of the Code, a substantive due process challenge would be more serious. However, although this issue is not decided here, this Court has held that the retroactive application of Section 522(f) is constitutional and does not feel that the conclusion would be different in this case. See *In re Clark*, 11 B.R. 828 (Bkrtcy.1981).

CONCLUSION

The only reasonable construction of "lien" as used in Section 506(d) is that it does refer to real property mortgages. It is used without qualification which indicates the definition of "lien" provided in Section 101(28) is applicable. The fact that Congress also defined different types of liens and provided special consideration for real property mortgages elsewhere in the Code indicates it is using "lien" in subsection (d) in accordance with its definition. A narrower construction is inconsistent with Section 506 as a whole and with the Code's scheme for determining allowed secured claims. Legislative history supports a broad construction. The Code's policies of providing a Debtor relief and a fresh start are furthered by allowing the avoidance of a real property mortgage to the extent it is undersecured since post-petition property acquisitions will inure only to the discharged Debtor's benefit.

Case law supports the conclusion Congress intended real property mortgages to be voidable under Section 506(d).

The operation of subsection (d) does not violate a lien holder's right to due process. The Code provides adequate notice and an opportunity for an adversarial hearing thus satisfying the requirements of procedural due process. The fact that the Defendant is deprived of an empty legal right rather than valuable property undercuts a substantive due process challenge. This Court holds that Congress intended Section 506(d) to be applicable to real property mortgages, that in doing so it acted reasonably under

the Bankruptcy power and that the Defendant's right to due process is not violated.

An appropriate Order will issue.