**In re Norman Leon CLEVERINGA and LaDonna Kay Cleveringa, Debtors.**

**Norman Leon CLEVERINGA and LaDonna Kay Cleveringa, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**Bankruptcy No. 85–00973S. Adv. No. 85–0151S.**

United States Bankruptcy Court, N.D. Iowa.

Aug. 22, 1985.

Richard L. Murphy, Asst. U.S. Atty., Sioux City, Iowa, for defendant.

Craig A. Raby, Sioux City, Iowa, for plaintiffs/debtors.

## MEMORANDUM OPINION AND ORDER

JOEL PELOFSKY, Bankruptcy Judge.

Plaintiffs, Norman Leon Cleveringa and LaDonna Kay Cleveringa, are Chapter 7 debtors and filed this present adversary pleading to avoid a mortgage lien on their homestead.

 The complaint, filed May 8, 1985, alleges that the debtors' homestead is worth approximately $40,000 and is encumbered with a mortgage held by the Farmers Home Administration Association in the amount of $79,991.00. The issue is whether the debtor can avoid the lien on their residence to the extent that the obligation exceeds the amount of the creditor's secured claim.

Section 506(d) of the Code, Title 11, U.S.C., states:

"To the extent that a lien secured a claim against the debtor that is not an allowed secured claim, such lien is void unless— (1) a party in interest has requested that the court determine and allow or disallow such claim under Section 502 of this title; or (2) such a claim was disallowed only under Section 502(e) of this title."

The debtors are not contesting that the creditor's claims are allowed, but rather, alleges that creditor's mortgage is in part an unsecured claim and in part a secured claim.

Section 506(a) of the Code provides:

"An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under Section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest."

In light of Section 506(a), the mortgage would be a secured claim to the extent that there is collateral actually securing the claim, or $40,000; and an unsecured claim to the extent of the difference between $40,000 and $79,991, or $39,991. Therefore, plaintiffs can avoid the lien under Section 506(d) in the amount of $39,991.

In opposition to plaintiffs' complaint, creditor alleges that since a Chapter 7 debtor cannot redeem real property under Section 722 of the Code, he should not be entitled to avoid the lien on his real property under Section 506(d).

The leading case in this area appears to be *In re Tanner*, 14 BR 933 (Bkrtcy WD Penn.1981). That court held that the legis-lative history and plain language of Section 506 clearly supports the finding that a "lien" includes a lien on real property. A lien is defined as "a charge against or interest in property to secure payment of a debt or performance of an obligation." Section 101(28) of the Code.

■ Unless otherwise indicated, a word in legislation must have the same meaning wherever it is used. *Tanner*, supra at 935. In addition, Congress has demonstrated that when it desired to single out a real property mortgage for special treatment, it will clearly so indicate. *Tanner*, supra at 935, citing Section 1322(b)(2).

■ A reading of Subsection 506(d) in the context of Section 506 of the Code as a whole supports the conclusion that "lien" includes the lien of a real property mortgage. Subsections (a), (b), (c) of 506 determine the extent a "lien on property", including a real property mortgage, gives rise to an allowed secured claim. *Tanner* at 936. Subsection (d) deals with a "lien on property" to the extent it does not effect an allowed secured claim. An interpretation which prevents the avoidance of a real property mortgage by excepting it from the meaning of "lien on property" as used in (a), (b) and (c) is unjustified if subsection (d) is read in context. See also *Brace v. State Farm Mut. Ins.*, 33 BR 91 (Bkrtcy SD Ohio 1983); *In re Gibbs*, 44 BR 475 (Bkrtcy D Minn.1984); *In the Matter of Vigne*, 18 BR 946 (Bkrtcy WD Penn.1982).

Legislative history also supports the finding that a lien on real property can be avoided under Section 506(d) of the Code. The legislative history reveals that "Subsection (d) permits liens to pass through bankruptcy cases unaffected. However, if a party in interest requests the court to determine and allow or disallow the claim secured by the lien under Section 502 and the claim is not allowed, then the lien is void to the extent the claim is not allowed." H.R.Rep. No. 595, 95th Cong., 1st Sess. 357, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6313 (1978). "The word lien is used three times without qualification in

successive sentences in describing the operation of 506(d)." *Tanner,* supra at 936. Absent a clear indication to the contrary, it is reasonable to presume that the word "lien" means the same throughout. Because the purpose of Section 506(d) would be defeated if the first sentence did not include a real property mortgage, the following sentences require consistent interpretations.

 Next, defendant argues that to allow the avoidance of a real property mortgage would constitute an unconstitutional taking of property without just compensation. In *Tanner,* supra, the court points out that to permit an undersecured mortgage to survive bankruptcy might permit a creditor to satisfy its claim out of a debtor's post-petition property. In Chapter 7 proceedings, debtor receives a discharge and a new beginning. Appreciation of property or an interest of equity ownership by the reduction of an outstanding mortgage would be subject to the claim of the unavoided, undersecured mortgage holder, post-petition. *Tanner,* supra at 936; see also *Brace,* supra at 93.

Moreover, Section 506 contemplates that a creditor will receive the same property value that they would receive through a non-bankruptcy forced sale. Assuming the sale price is the market value, the creditor would receive only that value and not the face amount of its claim. The property would pass to the purchaser free of the lien. The operation of Section 506(d) merely effectuates the market price, *id.* at 936–937.

In this regard, the creditor argues that no prior valuation should limit its bidding rights at a forced sale since it is the bid at the sale and not an appraisal which should be controlling. The court is satisfied, however, that the operation of Section 506(d) to avoid an undersecured real property mortgage reinforces the Code's policy of providing the debtor with a fresh start, see *Tanner* supra at 937, and that the use of appraisal evidence is proper.

Based on the foregoing, the court finds that plaintiff can avoid the lien on his residence to the extent the amount of the claim exceeds the appraised value. To the extent the creditor's lien is an allowed secured claim, it will survive debtors' discharge.