**UNITED STATES of America Respondent,**

v.

**Kathleen ZLOGAR, Petitioner.**

No. 90 C 3850.
Bankruptcy No. 87 B 2814.

United States District Court,
N.D. Illinois, E.D.

March 28, 1991.

Phelan & Egan, P.C., Joliet, Ill., for petitioner.

Anton Valukas, Douglas W. Snoeyenbos, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for respondent.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

On February 7, 1987, Kathleen Zlogar ("debtor") filed a Chapter 7 bankruptcy petition. Zlogar's only asset at issue here is an undivided one-half interest in her residence, the value of which was stipulated at $40,000 on February 27, 1987. There also exists competing liens on this interest which exceed $40,000. On May 12, 1987, the bankruptcy trustee filed a "no-asset" report, indicating that the trustee did not intend to administer assets listed in the debtor's schedules.[1] The parties, as well as Judge Coar in the bankruptcy court, treated this report as tantamount to abandonment of the estate's interest in the debtor's property.

Valid underlying claims are secured by the liens at issue. In his Memorandum Opinion and Order entered June 12, 1989, Judge Coar found that § 506 of the Bankruptcy Code was applicable to Chapter 7 cases involving real property, regardless of whether the property was abandoned and the debtor sought to retain ownership. The court held that the debtor could seek further valuation of the secured claims and avoid liens on the subject property to the extent that those liens exceeded the value of the debtor's interest in the property. 101 B.R. 1.

In his Memorandum Opinion of May 17, 1990, Judge Coar determined the priorities and status of the secured claims. Lincolnway Federal Savings and Loan, Inc. ("Lincolnway"), owning a first mortgage in the property, was deemed to have first priority on its secured lien of $7,164.23. The United States of America ("IRS") has second priority with a secured claim of $32,835.77, which represents the difference between the debtor's appraised value of $40,000 and Lincolnway's $7,164.23 secured claim. This claim stems from the IRS's tax lien of $41,511.16. Because § 506 was applied, the IRS now also holds a remaining unsecured claim of $8,675.39. All other remaining claims on the property were deemed unsecured.

The IRS has now appealed the bankruptcy court's decision, regarding two questions of law. On review, a district court must accept the bankruptcy court's findings of fact unless clearly erroneous, Fed.R.Bankr.P. 8013, but reviews conclusions of law de novo. *In Re Kimzey*, 761 F.2d 421 (7th Cir.1985).

### Section 506

For the purpose of retaining ownership in her property, Ms. Zlogar wishes to avoid the liens on such property to the extent they exceed the value of her interest. Section 506 of the Bankruptcy Code provides, in relevant part:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 533 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

. . . . .

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

---

1. A no asset report generally indicates the existence of no property available for distribution from the estate over and above that exempted by debtor.

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title;  or

(2) such claim is not an allowed secured claim due only to the failures of an entity to file a proof of such claim under section 501 of this title.

The mechanism in § 506(a) places a value on collateral in order to determine the status of secured claims.  Section 506(d) works to void liens that do not constitute an allowed secured claim.

Zlogar seeks to first invoke § 506(a) and have the court determine the secured status of the liens on her home.  Then she would strip down these liens (reduce them to the value of the collateral) under § 506(d) and ultimately satisfy any allowed secured claim.  Any remaining lienholders would hold unsecured claims and their debts would be discharged.  The IRS contends this is an impermissible use of § 506.

At the outset, it should be noted that this particular issue has been analyzed by numerous bankruptcy courts, with a slight majority allowing lien stripping under § 506.  For the majority view, see *In re Brouse*, 110 B.R. 539 (Bkrtcy.Colo.1990); *In re Moses*, 110 B.R. 962 (Bkrtcy.N.D. Okla.1990); *In re Tanner*, 14 B.R. 933 (Bkrtcy.W.D.Pa.1981).  For the minority view, see *In re Shrum*, 98 B.R. 995 (Bkrtcy.W.D.Okla.1989); *In re Maitland*, 61 B.R. 130 (Bkrtcy.E.D.Va.1986).  Four federal circuit courts have examined the issue presented here.  Of these, three favor allowing the debtor to use § 506 to strip down liens.  See *In re Lindsey*, 823 F.2d 189 (7th Cir.1987); *In re Folendore*, 862 F.2d 1537 (11th Cir.1989); *Gaglia v. First Federal Savings & Loan Assoc.*, 889 F.2d 1304 (3rd Cir.1989).  The one circuit holding against the debtor's use of "lien stripping" was the tenth circuit in *In re Dewsnup*, 908 F.2d 588 (10th Cir.1990).

In *Lindsey*, the trustee abandoned an estate which contained no assets of benefit to the unsecured creditors.  The bankruptcy court allowed the debtors to avoid liens under § 506 and gave them 30 days to redeem the property by paying the lenders its current market value.  Instead, the debtors appealed to the district court, seeking the right to continue payments on the first mortgage (which had become due and payable on their prior default) and to establish a repayment schedule for the second mortgage.  The district court denied this relief and the circuit court affirmed.  While not directly ruling on the use of § 506, the seventh circuit, in a now often cited passage, thoroughly explained its application.  The court also illustrated that the "old saw" that liens pass through bankruptcy unaffected, can sometimes be misleading.  To enforce a lien, a creditor is not required to file a claim in the debtor's bankruptcy case.  Abstaining from such action, however, will result in the creditor losing the possibility of enforcing any deficiency judgement against the assets of debtor's estate.  *Lindsey*, 823 F.2d at 190–91.  The seventh circuit stated:

Since the Lindseys had no assets other than those secured by the mortgages, the mortgagees had no incentive to seek a deficiency judgement, hence no incentive to file a claim in bankruptcy.  If, therefore, liens really passed through bankruptcy unaffected, the mortgagees would not have been dragged into the bankruptcy proceeding at all, since they were content to foreclose on their liens.  But how then are sections 506(a) and (d)—provisions that apply only to liens, and hurt the lienor—ever brought into play?  One possibility is that they are brought into play only when the lienor, wanting to have an unsecured claim against the bankrupt estate to the extent of any difference between the value of his lien and the amount of money owed him by the debtor, has voluntarily filed a claim in bankruptcy.  This interpretation, which makes section 506 merely an optional creditor's remedy, is consistent with the notion that liens pass through bankruptcy unaffected, but overlooks the significance of section 506(d) when read together with section 501, which governs proof of claims.  Section 501(c) authorizes the debtor as well as the creditor to file a proof of claim, including proof of a secured claim under section 506(a).  Such a filing not only drags the secured creditor into the bankruptcy proceeding against

his will but brings section 506(d) into play, that is, strips down the lien, even if the lienor would have preferred to bypass the bankruptcy proceeding completely.

*Id.*

The seventh circuit's view is consistent with the majority of courts addressing the issue. As Judge Coar reasoned, the court is sanctioning lien stripping on abandoned property as a legitimate Chapter 7 bankruptcy option, even where the debtor ultimately seeks to retain ownership of the property. As the *Lindsey* court asserted, § 506's purpose is to ensure that secured creditors remain in the same position whether or not bankruptcy proceedings are engaged or bypassed. Where secured creditors foreclose their liens and bypass bankruptcy, they receive the market value of the interest secured by the lien and a deficiency judgement for the remainder. Using § 506, secured creditors obtain a secured interest equal to the market value of such interest. They can then foreclose on this and become an unsecured creditor for the rest. *Id.* As the third circuit reasoned in *Gaglia*, with a Chapter 7 petition all of debtor's right and title to property passes to the estate, including legal title to property secured by a mortgage. Thus, even if Zlogar had no equity in the real estate, the bankruptcy estate had an interest in it. *Gaglia*, 889 F.2d at 1308.

Zlogar, as is typical in these types of cases, desires to retain ownership of the subject real property. Section 722 of the Bankruptcy Code, redemption, must therefore be addressed and states:

An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

The IRS argues that unlike § 722, § 506 is not limited to personal property. Therefore, if § 506 applies here, § 722 would be unnecessary and its restrictions meaningless. This court, however, does not view § 506 as a redemption provision. As the seventh circuit asserted in *Lindsey*, 823 F.2d at 191, upon completion of the lien stripping, a debtor will be discharged and the creditors allowed to foreclose their stripped down liens. This foreclosure, however, is subject to any rights of redemption the debtor may have under state law. This is essentially the same result that would occur if bankruptcy proceedings were never initiated. The interaction of §§ 501 and 506 merely enables the debtor to precipitate the foreclosure proceedings. Any arguable redundancy in § 506 and § 722 does not prevent the application of § 506 here. *Gaglia*, 889 F.2d at 1310.

The minority of courts adverse to lien stripping advance one final argument, that lien avoidance will frustrate the Congressional policy of encouraging reorganization by allowing a debtor to receive in Chapter 7 more than could be obtained in Chapters 11 and 13. In *Gaglia*, 889 F.2d at 1311, the third circuit rejected the above argument. It reasoned that Bankruptcy Code sections are carefully drawn using specific, precise language. Therefore, Congress was aware of how to precisely exempt certain creditors from § 506. This court is unwilling to read into § 506 an exemption for an undersecured creditor when the property securing the claim is not liquidated in Chapter 7 proceedings. The minority courts approach lien avoidance as if it existed in a vacuum. Debtors possess a large number of options that must be considered when choosing a bankruptcy chapter. Each particular chapter holds its own unique inducements and restrictions. "If 506(d) is one of those provisions that makes Chapter 7 attractive for individual debtors, that is a decision Congress has made and it is something for Congress to change if it sees fit." *In re Gibbs*, 44 B.R. 475 (Bkrtcy.Minn. 1984).

The final issue that always arises in these cases is the question of fairness and equity. The result achieved today is entire-

ly consistent with the Bankruptcy Code's policy of giving debtors a much needed fresh start. As one bankruptcy court stated, "the bottom line is that this is a question that Congress should address because the court cannot rewrite this section of the Bankruptcy Code, and the result reached today appears to be the one the Code compels." *In re Worrell*, 67 B.R. 16, 20 (C.D. Ill.1986).

### Post-petition property appreciation

■ There exist no Bankruptcy Code sections or rules that explicitly deal with post-petition appreciation in the value of a debtor's real estate. The "appreciation" issue, though, must be analyzed in light of § 506(d) of the Bankruptcy Code. Section 506(d) states "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void ..." The first case addressing the "appreciation" issue was *In re Tanner*, 14 B.R. 933 (Bkrtcy.W.D.Pa.1981). Here, the debtor used § 506(d) to avoid a real property mortgage to the extent its value exceeded that of the collateral. The *Tanner* court stated that in construing statutes, a determination must be made of its overall purpose. Specifically, the court asked if the avoidance of a real property mortgage, to the extent it exceeds the value of the collateral, was consistent with the Code's policy of a "fresh start" for an "honest but unfortunate debtor?" The court reasoned as follows:

> The assets of the debtor are determined at the time of filing. Apart from allowable exemptions, the remainder of the debtor's assets are distributed to his creditors. The debtor receives a discharge and a new beginning. Property acquired afterward is not subject to claims of pre-petition creditors. Appreciation of property or an increase of equity ownership by the reduction of an outstanding mortgage are examples of after-acquired property which are attributable to debtor's post-bankruptcy efforts. If a real property mortgage is not avoidable to the extent it is undersecured, a pre-petition creditor will impair the debt-

or's fresh start by partaking in his postpetition property acquisitions.

*Id.* at 936. Consistent with Code policy, this court agrees with the reasoning of *Tanner* and every other court that has addressed this issue.

In opposition, the IRS attempts to distinguish between the reduction of an outstanding mortgage, *Tanner's* facts, and general appreciation in property value. Appellant asserts that if debtor's post-petition efforts are the critical factor, then any post-petition appreciation must go to the estate. The rationale is that such appreciation is due solely to market forces and is unrelated to any efforts by the debtor. This argument ignores the plain language of *Tanner*. The court purposely separated the appreciation example from the reduction of an outstanding mortgage example to emphasize that it was recognizing both as inuring to the debtor.

The most recent case to address the appreciation issue was *In re Frengel*, 115 B.R. 569 (Bkrtcy.N.D.Ohio 1989). Here, Chapter 7 debtors were allowed to avoid federal and state tax liens under § 506(d). That court stated, "[i]t is now well settled that a secured creditor's interest in property is determined as of the date of the filing of the petition for relief. Post-petition appreciations in the value of property, as well as after acquired property, inure to the benefit of a debtor under the fresh start principle." *Id.* at 572. Not including the lower court here, there apparently exist only three bankruptcy decisions since *Tanner* that have directly dealt with the issue. All three cite to *Tanner* and reach the same conclusions. See, *In re O'Leary*, 75 B.R. 881 (Bkrtcy.Or.1987) (chapter 7 debtors could void lien on their real property to extent it exceeded fair market value of collateral residence); *In re Crouch*, 76 B.R. 91 (Bkrtcy.W.D.Va.1987) (chapter 7 debtors could avoid federal tax lien to extent it was unsecured); *In re Frengel*, 115 B.R. 569 (Bkrtcy.N.D.Ohio 1989) (chapter 7 debtors could avoid second lien deed of trust on

real property to extent that lien secured claim that was not allowed).[2]

Allowing post-petition appreciation to inure to the benefit of the debtor furthers the Bankruptcy Code's policy of giving the debtor a fresh start. The IRS has failed to cite any authority nor have they made any argument that convinces this court to depart from prior bankruptcy court decisions reaching this result.

For the foregoing reasons the judgment of the bankruptcy court is affirmed.

---

**2.** The IRS brings up dicta from *In re Lindsey,* 823 F.2d 189 (7th Cir.1987) in support of its claim. In discussing its 506(d), the circuit court explained that the section allowed a debtor to precipitate foreclosure proceedings. Debtors could actually want to take this road where "real estate prices [are] temporarily depressed, in order to minimize the secured claims and thus increase the amount available for the unse-cured creditors." Appellant, however, ignored the language immediately following this passage: "[t]his presupposes a case in which the trustee is standing in the debtor's shoes and representing the unsecured creditors, rather than a case such as this where the debtor is simply trying to shield as much of his property as possible from the only creditors who are pursuing him." *Id.* at 191.