**In re Time F. SALANOA and Ellen S. Salanoa, Debtors.**

**No. 95–13380–A7.**

United States Bankruptcy Court, S.D. California.

May 16, 2001.

Richard R. Schwabe, Vista, CA.

Harry S. Taxel, Trustee, La Jolla, CA.

Melissa A. Blackburn, Mulvaney Kahan & Barry, San Diego, CA.

## MEMORANDUM DECISION

LOUISE DeCARL ADLER, Bankruptcy Judge.

## I.

## INTRODUCTION

Time F. Salanoa and Ellen S. Salanoa ("Debtors") move to avoid the judicial lien of Murray M. Lampert Company, Inc. ("Lampert") pursuant to 11 U.S.C. § 522(f). At issue is the operative date to value the liens for purposes of calculating whether Lampert's lien can be avoided. The Debtors contend the operative date is the petition date; Lampert contends it is the date of the hearing. The operative date determines the Debtors' ability to avoid the lien.

After considering all the evidence and the arguments of counsel, the Court holds the petition date is the operative date for all § 522(f) determinations.

## II.

## FACTUAL BACKGROUND

The Debtors filed their chapter 7 bankruptcy petition on December 5, 1995 and received their discharge on March 15, 1996. Their bankruptcy schedules listed Lampert as a general unsecured creditor in the amount of $5,000.

In February 2001, the Debtors attempted to refinance their residence and learned of Lampert's lien. Consequently, on March 15, 2001, they filed a motion to reopen the case and avoid the lien. Lampert did not oppose reopening the case, but it opposes avoidance of the lien.

The Debtors' motion relies upon the valuations in their bankruptcy schedules, which they reaffirm were correct as of the date of filing their petition. [*See* Declaration of Tina Salanoa filed March 15, 2001] These schedules valued the residence at $130,000 on the petition date, subject to the following liens:

| | |
|---|---|
| First Trust Deed: | $ 12,000 |
| Second Trust Deed: | $ 118,600 |
| | $ 130,600 |

Additionally, Debtors scheduled a homestead exemption of $14,000 pursuant to California Civil Procedure Code § 703.140(b)(5).

The parties agree Lampert's judicial lien is $8,087 even though the Debtors listed the debt on their schedules as $5,000. The abstract of judgment confirms the judgment was entered in the amount of $8,087.54. [*See* Debtors' Exh. "D"]

Lampert opines the Debtors' residence was worth $137,673 on the petition date. However, Lampert's valuation is based solely upon the declaration of its attorney who does not appear to have any qualifications to appraise real property. Specifically, the attorney compiled a list of what she believed were comparable sales in the Debtors' neighborhood at around the petition date, which in her opinion tended to support a claim that the residence was worth $137,673. Lampert values the liens *as of the hearing date* as follows:

| | |
|---|---|
| Judicial Lien: | $ 8,087 |
| First Trust Deed: | $ –0– |
| Second Trust Deed: | $ 112,000 |

It is undisputed the First Trust Deed was fully paid post-petition. Lampert's counsel determined the amount of the Second Trust Deed by relying on an examination of the originally recorded documents. Although she questions how the present balance of the Second Trust Deed could be

more than the original principal balance, she submitted no evidence establishing it was other than as declared by the Debtors. If Lampert's higher property valuation is used and the liens are valued as of the hearing date, at best the lien is only partially avoidable.

## III.

## ISSUES

1. What is the operative date to value the liens on the residence?

2. Can the lien be avoided?

## IV.

## LEGAL ANALYSIS

### 1. *What is The Operative Date to Value the Liens on the Residence?*

█ Section 522(f)(1)(A) provides that a debtor may avoid the fixing of a lien "on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section," if such lien is a judicial lien. Subsection 522(a) specifies that the term "value" in § 522 means the fair market value *as of the date of filing of the petition.*

█ Section § 522(f)(1)(A) does not refer to "value." Nevertheless, it is well settled the petition date is the operative date to value the debtor's residence and the homestead exemption. *See BFP v. Resolution Trust Corporation,* 511 U.S. 531, 537, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994)(for purposes of § 522, "value" means fair market value on the petition date); *see also In re Bruton,* 167 B.R. 923, 925 (Bankr.S.D.Cal.1994)(nature and extent of debtor's homestead exemption rights are determined as of the petition date).

In contrast, there is a split of authority concerning the operative date to value the liens for avoidance under § 522(f). One line of cases holds the operative date is the petition date. *In re Waldman,* 81 B.R. 313, 318 (Bankr.E.D.Pa.1987) (*citing In re Chandler,* 77 B.R. 513, 516–17 (Bankr. E.D.Pa.1987)). A contrary line holds the operative date is date of the hearing. *In re Mangold,* 244 B.R. 901, 905 (Bankr.S.D.Ohio.2000)(recognizing a split of authority and adopting the date of the hearing as the operative date to value the liens).[1]

Neither line of cases explains their holdings; nor do the parties provide a satisfactory explanation. Lampert proffered no explanation for adopting the hearing date. The Debtors' explanation for adopting the petition date is based upon *In re Chandler,* 77 B.R. at 516. The Debtors acknowledge *Chandler* does not explain its holding, but it refers readers to *In re Tanner,* 14 B.R. 933 (Bankr.W.D.Pa.1981), which provides the rationale for valuing the liens on the petition date. [*See* Reply at 4]

The Court has reviewed *Tanner* and is not persuaded by its rationale. *Tanner* is a case decided under § 506(d) and did not consider avoidance of a judicial lien under § 522(f). It held § 506(d) allows a debtor to avoid a consensual lien securing real property to the extent the lien is unsecured. *Id.* at 937. The court reasoned this result is consistent with § 506(a) which limits a secured claim to the value of the property as of the petition date. *Id.* at 936–37. Further, it reasoned that if the unsecured portion is not avoided, the partially secured creditor will partake in the appreciation of the property or the increase in equity due to reduction of debt, which are attributable to the debtor's post-

---

1. The parties do not cite any cases within this Circuit, and our research has revealed none.

bankruptcy efforts. *Id.* Pursuant to this rationale, Debtors argue the liens must be valued as of the petition date to limit Lampert to its § 506(a) secured claim and protect their post-bankruptcy reduction of the First Trust Deed.

■ Apparently, Debtors are unaware that *Tanner* was reversed by the United States Supreme Court in *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). Specifically, the Supreme Court rejected the reasoning of *Tanner*, and held § 506(d) does not allow a chapter 7 debtor to "strip down" a lien to the extent it is unsecured. *Id.* at 417, 112 S.Ct. 773. The Court confirmed the pre-Code rule that liens pass through bankruptcy unaffected, and any increase in the value of the property accrues to the benefit of the creditor and not the debtor. *Id.* at 417–18, 112 S.Ct. 773. Accordingly, *Dewsnup* instructs that Lampert's lien passed through bankruptcy unaffected. Any post-bankruptcy reduction of the First Trust Deed accrued to Lampert, unless Lampert's lien is avoided.[2]

Although not argued, the Court has considered whether § 522(f)(2)(A) supplies the operative date to value the liens. This section sets forth the mathematical formula to determine whether a lien "impairs" an exemption. But it does not specify the operative date for purposes of applying the formula. The legislative history for this section is also silent concerning the operative date. Accordingly, § 522(f)(2)(A) is not helpful.

■ The Court holds the petition date is the operative date to make all § 522(f) determinations. This approach is consis-

tent with *Dewsnup* because it allows a lien creditor to enjoy the increase in value if the lien is not avoided. However, it also preserves the parties' rights as they existed on the petition date to the extent the lien is avoidable under § 522(f). Further, the petition date is also the most logical date. The Court must value the residence and the Debtor's entitlement to an exemption on the petition date. As the amount of the liens is relevant to these determinations, it makes sense to value the liens on the same date.

The only possible exception would be where the debtor moves to avoid a judicial lien post-discharge and the creditor shows prejudicial delay. In that situation, the debtor's post-discharge motion to avoid the lien should be time-barred. Alternatively, if the motion were allowed to proceed, the injured creditor could argue the liens should be valued as of the hearing date. *See e.g. In re Ricks*, 62 B.R. 681, 682–83 (Bankr.S.D.Cal.1986)(holding a post-discharge lien avoidance motion is time-barred if the creditor shows it detrimentally relied upon the debtor's inaction in avoiding the lien).

In this case, Lampert has demonstrated no prejudice by the Court's use of the petition date to value the liens. As more fully set forth below, the schedules showed its lien was worthless and avoidable even if the residence were worth $137,673 as it contends. Lampert did nothing to clarify its rights; nor does it claim it took any other actions that would constitute detrimental reliance. In the absence of detrimental reliance, the parties should have the same rights that they had on the petition date.

---

2. *Dewsnup* involved the "strip down" of a consensual mortgage. Nevertheless, it affirms the basic premise that a lien passes through bankruptcy unaffected unless it is avoided under § 522(f) or another appropriate section of the Bankruptcy Code.

### 2. *Can the Lien be Avoided?*

■ Section 522(f)(2)(A) provides a lien shall be considered to "impair" an exemption to the extent that the sum of:

1. The judgment lien:      $   8,087

2. All "other" liens on the
     property:      $   12,000
           $ 118,600
           $ 130,600

3. The allowed exemption
    amount if there were no
    liens on the property:      $   14,000

4. TOTAL OF 1, 2 and 3
    ABOVE:      $ 152,687

5. (Subtract the property
    value from      $ 152,687
    the total of 1, 2 and 3
     above)     −$ 130,000
           $   22,687

The total of the judgment lien, the other liens and the exemption exceeds the value of the Debtors' interest in the property in the absence of any liens by $22,687. Accordingly, Lampert's lien is avoidable in full.[3]

■ Lampert contends the property was actually worth $137,673 on the petition date, but its attorney is not competent to value the residence. *See* Fed.R.Evid. 702 (setting forth the criteria to qualify as an expert witness). Further, its contention that the Second Trust Deed should not have increased, is pure speculation. It is quite plausible the balance increased because the Debtors fell behind on their payments. The Debtors' figures are the only competent evidence of value. The calculation using Debtors' figures is set forth in the preceding paragraph.[4]

Finally, even if the Court adopted Lampert's valuations as correct, the lien is still avoidable if the liens are valued *as of the petition date.* Subtracting the higher property value of $137,673 from $146,087 ($8,087 + $12,000 + $112,000 + $14,000) results in $8,414. Thus, Lampert can prevail only if the $12,000 First Trust Deed paid off post-bankruptcy is excluded from the calculation.

## IV

## CONCLUSION

The petition date is the operative date to make all § 522(f) determinations. Based upon the uncontroverted evidence of value in the Debtors' schedules and declaration, the Debtors' motion to avoid the judicial lien is granted. This Memorandum Decision is in lieu of findings of fact and conclusions of law. Counsel for the Debtors is directed to prepare and lodge an order in accordance with this Memorandum Decision within ten days of the date of its entry.

---

3. Lampert's lien would remain only to the extent it exceeds $22,687. *See In re Hanger,* 217 B.R. 592, 595 (9th Cir.BAP1997)(explaining *to what extent* a lien impairs an exemption and must be avoided).

4. The Advisory Committee Notes to Fed. R.Evid. 702 recognizes a landowner's competence to testify to land values. Additionally, the Debtors can give their lay opinion of value based upon "typical landowner type testimony" such as the condition of the property and the purchase price. Russell, Bankruptcy Evidence Manual, 2001 Ed., § 701.2 at 755–56.